MASHETER, APPELLANT, *v.* OHIO HOLDING CO. ET AL., APPELLEES.

(No. 73AP-88—Decided September 4, 1973.)

*Mr. William J. Brown*, Attorney General, *Mr. Donald J. Guittar* and *Mr. Ralph C. Godwin*, for appellant.

*Messrs Lucas, Prendergast, Albright, Gibson, Brown & Newman, Mr. Robert E. Albright* and *Mr. Timothy J. Ucker*, of counsel, for appellee Ohio Holding Company.

*Mr. George C. Smith*, prosecuting attorney, for appellees Auditor and Treasurer of Franklin County, Ohio.

WHITESIDE, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas in an eminent domain proceeding brought by the director of highways pursuant to R. C. Chapter 163, to appropriate the property of defendants needed in the construction and improvement of Route No. I-270 in Franklin County, Ohio. The case proceeded to a jury trial for the ascertainment of the compensation due defendants for the taking of their property. The jury returned a verdict assessing compensation for the land taken in the amount of $608,000 and an additional amount of $50,000 for damages to the residue. The director appeals and raises four assignments of error as follows:

"1. The court erred in its rulings on an objection to

and a motion to strike immaterial and prejudicial allegations in owners' opening statement, and objections to and a motion to strike testimony in substantiation of those allegations during the trial.

"2. The court erred in overruling the director's objections to the admission into evidence of the selling price of lands zoned for a higher classification than the property taken, and in refusing to strike the entire testimony of Mr. Hill.

"3. The court erred in its refusal to strike the testimony of the witness, George Little.

"4. The court erred in its refusal to instruct the jury on the law as follows:

" 'The determination of compensation cannot be dependent upon whether or not there will be a change of zoning of the property in the future. Compensation must be based upon the fair market value of the property for its highest and best use available within existing zoning regulations. The possibility of future rezoning may not be utilized to increase the fair market value over that which an informed willing purchaser would pay under existing zoning. If, however, such a purchaser would be presently willing to pay more than an amount justified by the uses permitted under existing zoning because of a general belief that there is a probability of a change of zoning, to permit a more valuable use within the reasonably foreseeable future, such evidence is admissible because it does reflect a factor in the present fair market value under existing zoning.' "

The first assignment of error relates primarily to a statement by counsel for defendants in the opening statement concerning a subdivision plat submitted by defendants to the city of Columbus which allegedly was rejected upon the grounds that the area was to be taken for highway purposes, which occurred several years before the date of taking. References were also made to litigation concerning the subdivision plat.

The trial court permitted counsel for defendants to continue with the opening statement over the objection

of the assistant attorney general. However, the trial court did remind the jury that the opening statement was not evidence and that the matter might or might not be admissible at trial, ending with the statement: "I'm going to let him complete his statement with the understanding that, you understand, it's not evidence. It may well be that as I understand the issue in the case, it may be admissible. If I feel it isn't admissible, I'll so rule."

During the trial, the trial court excluded the evidence pertaining to the subdivision plat, stating to the jury:

"Ladies and gentlemen, I have decided that the objection should be sustained and that the plat would really have nothing to do with the merits of this case so I sustained the objection."

While the trial court should have excluded the references to the subdivision plat during opening statement, the trial court did exclude the evidence when offered and gave cautionary instructions to the jury both at the time of the opening statement and at the time of the exclusion of the evidence. For this reason, we find no prejudicial error in the trial court's overruling of the objection to the opening statement. The first assignment of error is not well taken.

The second and third assignments of error are related and will be considered together, although they refer to the testimony of two different expert witnesses offered by defendants.

This case involves a complex and difficult valuation issue in that the property taken was zoned for single-family residential use but all of the expert witnesses, both those for the property owner and those for the director, testified that the highest and best use of the property would be to hold the property for future development under an anticipated change of zoning for commercial and apartment use. The residue of the tract had been rezoned to commercial use approximately a year before the date of take, and at the same time another portion of the original residue was zoned for apartment use, which portion was sold by the property owner prior to the date of take.

The record is replete with references to zoning requests and denials both as to the subject property and other properties in the area, coupled with the property owner's contention that a rezoning of the subject property taken had been denied solely because it was anticipated that it would be taken for highway purposes. Likewise, there are throughout the record contentions by the director that it was the policy of the city of Columbus to have no commercial zoning in this area, coupled with the contention that the rezoning of the residue which occurred was a result of the taking, although it occurred a year prior thereto. This inconsistency in the contentions of the parties created a difficulty for the trial court upon which he commented at length.

Compensation for land taken for public use is determined by the fair market value of the property on the date of taking unless for some unusual circumstance a different earlier date of valuation is ascertained. In this case, it was agreed that the date of take, and the date of valuation, was July 14, 1969.

Fair market value is the amount of money which could be obtained on the open market at a voluntary sale of the property. It is the amount that a purchaser who is willing, but not required to buy, would pay and that a seller who is willing, but not required to sell, would accept, when both are fully aware and informed of all circumstances involving the value and use of the property. Market value is determined by the most valuable and best uses to which the property could reasonably, practically, and lawfully be adapted which is referred to as "the highest and best use."

The zoning of property is an important factor in determining highest and best use because an informed buyer would not pay more for property than it is worth for a use to which it can lawfully be put. Accordingly, evidence of the value of property for a use which is not permitted by the zoning of the property is inadmissible in an eminent domain proceeding. However, it is generally recognized that zoning laws are changed from time to time and that,

especially with respect to undeveloped property, development of an area may result in a change of zoning from residential to apartments or to commercial. Both the evidence in this case, and general knowledge indicate that developers or investors buying such tracts of property anticipate a change of zoning and pay more for the property than it would be worth if devoted to the uses permitted by the existing zoning.

Holding property for future development in anticipation of a change of zoning to permit a more valuable use of the property to which it could reasonably and practically be adapted, if permitted by the zoning, is obviously a permitted use under existing zoning. How much an informed buyer would pay for property for that purpose is an issue of fact, and evidence may be admitted in an appropriation proceeding upon the issue. Obviously, the amount an informed buyer would pay under such circumstances depends upon his impression of the degree of probability of anticipated change of zoning and the length of time that he anticipates that the property must be held before such change in zoning occurs.

However, whether or not zoning authorities will in fact change the zoning is not an issue in appropriation proceedings; neither is the question of the validity of the existing zoning, which, if a question, must be determined by separate proceedings.

The zoning problem has been the subject of decisions in three other appellate districts: *City of Euclid* v. *The Lakeshore Co.* (1956), 102 Ohio App. 96; *In re Appropriation of Easement* (1963), 118 Ohio App. 315; and *Bd. of Edn.* v. *Graham* (1968), 15 Ohio App. 2d 196. *Graham* followed *Euclid* and *In re Appropriation* distinguished it. In *Euclid*, it is stated, at page 111:

"* * * To speculate on what may be the legislative policy of a council of a city or village in the future in changing a particular zoning classification when considered for the purpose of fixing the value of land taken for public purposes is of such a speculative character that a court should not permit such evidence of value of the prop-

erty to be presented in the trial of a condemnation proceeding."

In *In re Appropriation*, it is stated at page 320:

"Properly admitted uncontroverted evidence in this record demonstrates that a reconsideration and amendment of the zoning applicable to this parcel was certain under conditions existing on the date of taking."

The zoning issue was also discussed in the unreported decision of this court in *Masheter* v. *Mariemont*, rendered January 12, 1971, in case No. 9933. In that decision, Judge Troop stated:

"* * * the highest and best use is ordinarily one which is permitted by zoning regulations. * * * But buyers do buy and pay more for a given parcel of land than can be supported by a present legally permitted use, a possible highest and best use not in conformity to existing zoning limitations. Courts appear to permit such a situation to be considered and relax the rigid rule limiting testimony to the highest and best use permitted by present zoning regulations, but only within definite limitations."

Judge Troop further stated the rule to be applied, as follows:

"The determination of compensation cannot be dependent upon whether or not there will be a change of zoning of the property in the future. Compensation must be based upon the fair market value of the property for its highest and best use available within existing zoning regulations. The *possibility* of future rezoning may not be utilized to increase the fair market value over that which an informed willing purchaser would pay under existing zoning. If, however, such a purchaser would be presently willing to pay more than an amount justified by the uses permitted under existing zoning because of a general belief that there is a *probability* of a change in zoning, to permit a more valuable use within the reasonably foreseeable future, such evidence is admissible because it does reflect a factor in the present fair market value under existing zoning."

This court assumed that the rule so stated was suffi-

ciently clear; however, the comments of counsel for both parties and the trial court indicate that this court was incorrect in this assumption.

We would thus attempt to clarify the issue and restate it as follows:

(1) Fair market value is not dependent upon whether there will or will not, in fact, be a change of zoning of the property in the future. Fair market value must be determined upon the basis of the highest and best use available within existing zoning. There should be no speculation as to what the future policy of the zoning authorities will be in regard to a zoning of the property, except to the extent, if any, it is shown by an expert appraiser's testimony that informed sellers and purchasers would so speculate.

(2) The mere possibility of future rezoning may not be utilized to increase fair market value to an amount over and above that which an informed willing purchaser would presently pay under existing zoning.

(3) It may, however, be shown by an expert appraiser's testimony that the highest and best use available, within existing zoning regulations, is to hold certain property for future development upon a generally held belief by informed purchasers and sellers that there is a probability of rezoning to permit a more valuable use within the reasonably foreseeable future.

(4) Further, where it is shown by such expert testimony that the highest and best use of property is to hold it for future development in anticipation of a future rezoning, the fair market value of the property is the amount that an informed willing purchaser would be presently willing to pay for the property, and an informed owner willing to accept, with full knowledge of the existing zoning, the probability of future rezoning, the difficulties attendant in obtaining such, and the reasonably foreseeable period of time necessary to hold the property before such change of zoning could be obtained, the adaptability of the property to the more valuable use, and the general development in the area involved, and evidence thereon may be presented by an expert appraiser's testimony.

Thus, as stated by Judge Troop in *Mariemont, supra*:
"Many factors enter into the consideration of buyers with respect to a given piece of land. Site analysis may be limited to present usage. It must be recognized, however, that a buyer may have in mind holding land out of use to await appreciation in value. The question is, narrowly and strictly, just what price would a willing purchaser pay an equally willing seller for the premises taken on a particular day * * *?"

*Thus, the issue remains, what is the fair market value of the property under existing zoning? This is the highest price that an informed willing buyer would pay and the lowest price that an informed willing seller would accept. It remains the price that the property would bring at a voluntary sale on the open market.* But that price must be one uninfluenced by the existence of the improvement for which the property is being taken. In other words, in this case, the fair market value of the property taken is the amount that the property would bring in a voluntary sale on the open market on the date of take, July 14, 1969, assuming the property was not to be taken for highway purposes.

That the instant case is one where an informed willing buyer would anticipate a future change of zoning to a more valuable use is indicated by the testimony of all of the expert witnesses. The property contains some 1700 feet of frontage on East Main Street with varying depths.

The property owner's witness Hill testified that the highest and best use of the portion of the property zoned for commercial was commerical. He further testified that of the portion of the property zoned for residential usage, the highest and best use of the frontage to a depth of approximately 300 feet was for potential commercial usage and that the highest and best use of the remainder was for potential apartment usage.

The property owner's witness Little ignored the existing zoning in determining highest and best use and testified that the highest and best use of the frontage (including the residue zoned for commercial) was for commercial

usage and that the highest and best use of the remainder was for apartment use and so appraised and valued the property.

The director's witness Kelly testified that the highest and best use "is a speculative use, is to be purchased by a speculative investor who would be willing to risk his money that the property, some of the property could be rezoned for apartment use and some of the property could be rezoned for commercial use." Kelly ignored the commercial zoning of the residue tract, contending: "These zonings had absolutely nothing to do with the property prior to the taking even though these zonings occurred about a year before the taking." We, parenthetically, note that this statement is in error and that existing zoning on the date of take must be considered in determining the value of the property regardless of the motivation or reason for the rezoning, unless a different date of valuation is established.

The director's witness Boyd testified that the highest and best use of the property "would be for a speculative holding pending a possible partial or even larger portion of it to obtain a change in zoning."

Turning now to the second assignment of error, which is directed to the testimony of Hill, the first objection is to the admission into evidence of the selling price of comparable property zoned for commercial usage. This evidence of comparables was first introduced with respect to the value of the residue before the taking, which residue was zoned for commercial. The evidence was admissible for that purpose. The before value of the residue properly would be predicated upon its existing commercial zoning.

Hill also testified that he utilized the same comparable sales together with another comparable sale of property zoned residential, but also with a highest and best use of potential commercial, in formulating his opinion as to the fair market value of the portion of the property taken which he considered to have a highest and best use of potential commercial pending possible rezoning. While the testimony of Mr. Hill, as that of the other experts, is not

as complete as might be contemplated by the foregoing discussion, in view of the fact all the experts agreed that this was a situation where an informed purchaser would purchase the property in anticipation of a future zoning change, we find no prejudicial error.

It is not unreasonable that a prospective buyer or seller would consider the value that property would have if rezoned, in determining to purchase property in hopes of obtaining a rezoning to that usage. He might also consider the value of the property for uses permitted by existing zoning, and then be willing to pay some amount between the two depending upon the degree of risk he believes is involved. An expert witness may express his opinion as to the degree of risk involved and, obviously, in this case the experts differed in this regard.

Furthermore, Hill testified that he made adjustments in arriving at his opinion, predicated upon the fact that the property was presently zoned residential. This is borne out by the fact that he testified that the value of the residue presently zoned for commercial was $40,000 per acre, whereas he testified that the value of the portion of the taking which he considered to have the highest and best use of potential commercial to be $32,000 an acre.

Hill also testified as to comparable sales of property zoned for apartment use with respect to that portion of the taking which he considered to have the highest and best use for potential apartment use. Included in these sales was the sale of the original portion of the tract involved which was rezoned for apartment use and which was sold for $17,000 an acre. Witness Hill again testified that he made adjustments because of the present zoning of the property taken and found a present value of that portion of $12,000 an acre. Again, we find no prejudicial error.

Hill did tend to divide the property taken into two separate tracts for valuation purposes, depending upon what he considered to be the potential usage of the property; however, no objection was directly directed thereto, but only the contention made that the property taken

should be valued as one unit rather than two separate units.

It might be noted that Hill testified by means of a videotape deposition. Such deposition was not transcribed by the court reporter and this court reviewed the testimony on videotape. Except for the additional time involved in reviewing the videotape deposition, it appears to be a satisfactory method of review and has afforded the court a clear understanding of the testimony of the witness.

We conclude that the director has not demonstrated prejudicial error by the trial court in admitting the testimony of Hill, or in refusing to strike his testimony. Accordingly, the second assignment of error is not well taken.

The third assignment of error relates to the refusal of the trial court to strike the testimony of Little. Mr. Little, in his testimony, ignored the present zoning and valued the property as if it were zoned for commercial use along the front and apartment use to the rear. This is indicated by his testimony on cross-examination, as follows:

"Q. * * * Will you tell me that again, what your opinion of the highest and best use of it was on July 14?

"A. My opinion of the highest and best use, the highest and best use of the property as of the date of taking was for, to be used for Commercial along the front and the multi-family Residential in the rear.

"Q. And that's your opinion of the highest and best use?

"A. Yes.

"Q. It was Commercial along the front?

"A. Sure.

"Q. Regardless of the fact that it was zoned Single Family Residential and could not be used for that purpose?

"A. That's right, sir.

"Mr. Godwin: I move the entire testimony of this witness be stricken.

"The Court: All right. Overruled."

That the witness Little ignored present zoning is also indicated by the fact that he valued both the residue which

was zoned commercial and that portion of the taking, which he testified had a highest and best use for commercial, at the same value of $43,000 per acre.

Since the testimony of Little was predicated upon the value of the property for uses not permitted under present zoning, the trial court erred in not striking that testimony.

While an expert witness may testify as to a price an informed willing buyer will pay, and an informed willing seller will accept, in anticipation of the future rezoning of the property to a more valuable use than permitted by present zoning, he may not testify, and predicate his opinion of value, upon the value that the property would have if it were rezoned to the more valuable use. The testimony must relate to the present fair market value of the property under the existing zoning, taking into consideration the extent, if any, that an informed purchaser would presently pay a higher value than justified by the uses permitted by present zoning, in anticipation of future rezoning to a more valuable use.

The fourth assignment of error relates to the trial court's refusal to instruct the jury upon the zoning issue. This was requested by the director, both prior to and subsequent to the charge by the court. While the requested charge itself may have been inappropriate, because it related to the admissibility of evidence rather than the function of the jury, the trial court should have charged upon the issue when requested.

This is especially true in light of the charge by the trial court to the jury that, "In determining the fair market value, you may consider what the property was worth generally for any and all uses for which it might be suitable including the most valuable and best uses which it could reasonably and practically be adapted," and the further statement in the charge: "In this case, you have become acquainted with the nature, the present and possibly future uses and you have heard the opinions as to its values. You must consider these factors along with all the evidence * * *."

Despite the repeated references to zoning during the testimony, and improper evidence presented with respect thereto by both parties, the trial court at no time, although requested, gave any instruction to the jury as to the effect of zoning or of what consideration should be given to it by the jury. The charge, as given, is open to the interpretation that the jury should give no consideration whatsoever to the existing zoning in determining compensation.

For the foregoing reasons, the first and second assignments of error are overruled, and the third and fourth assignments of error are sustained; the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this decision.

*Judgment reversed and cause remanded.*

TROOP, P. J., concurs.

HOLMES, J., concurring in part and dissenting in part.

I concur with the majority herein as such decision relates to assignments of error numbers one, three, and four, and would remand for the reasons given therein. However, I differ from my colleagues as such decision relates to assignment of error number two.

The testimony of Mr. Hill on videotape, although very professionally rendered, was prejudicial error in the manner in which presented. Properly framed, and within the proper context, such testimony regarding fair market values could well have been appropriate, but not as such testimony stood.

For the purposes of the presentation of testimony by an expert witness, where the sale prices of other properties are not of properties similarly zoned, considerable care needs to be exercised in the presentation of the data by the expert.

What in fact is being presented are not comparables in the sense of present lawful use, but potential comparables in the event such properties would be rezoned, and such

data must be presented in such a fashion that it is clear to the jury that the attendant adjustment factors as applied by the expert are for the reason of the more restrictive present use.

I agree with the general statement of the rule to be applied in determining "fair market value" where dealing with property of more limited zoning use as contained in subsections (1), (2), (3) and (4) as set forth in the majority opinion herein.

I believe that testimony as to what an informed willing purchaser would presently be willing to pay for property when there is a general belief that there is a probability of a change of zoning to permit a more valuable use within the reasonably foreseeable future would be admissible, *but* only within a proper framework of the presentation of such testimony.

It is my view that the following elements must be shown: that the purchaser is an informed purchaser, with knowledge of the present zoning, purchasing from an informed seller; the probability of the future zoning; the difficulties attendant in obtaining such change of zoning; the reasonable foreseeable period of time necessary to hold the property before such change of zoning could be obtained; the adaptability of the property to the more valuable use; and the general development in the area involved.

In the matter before this court, Mr. Hill's testimony was lacking in many of the prerequisites necessary to the admission of the testimony relative to the other sales transactions of properties zoned differently than that with which they were being compared.

It is true that Mr. Hill, in arriving at his figures relating to the fair market values of the parcels, made some rather significant adjustments thereto, but such adjustments did not completely cure what I believe to be prejudicial error in the manner in which his testimony relating to these noncomparable sales was given.

It is my view that the jury in this regard could not have failed to be confused, particularly in light of the fact that the court did not charge in clarification of such issue.