**CITY OF COLUMBUS, Appellee,**

v.

**TRIPLETT, Appellant, et al.**

[Cite as *Columbus v. Triplett* (1993), 91 Ohio App.3d 239.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–461.

Decided Oct. 21, 1993.

240

*Ronald J. O'Brien,* City Attorney, *John C. Klein III* and *Richard A. Pieplow,* Assistant City Attorneys, for appellee.

*James Triplett, pro se.*

---

PEGGY BRYANT, Presiding Judge.

Defendant-appellant, James Triplett, appeals from a judgment of the Franklin County Court of Common Pleas granting the petition of plaintiff-appellee, city of Columbus, for appropriation of defendant's property, and awarding defendant $410,000 as compensation for the loss of his property.

In July 1980, Columbus City Council passed Resolution 135X–80 declaring the city of Columbus to be an "impacted city" as defined in R.C. 1728.01(C), and further declaring an area in downtown Columbus to be a "blighted area" as defined in R.C. 1728.01(E). The resolution also set forth a "community development plan" calling for the city to acquire property in the "blighted area" by appropriation and to sell the acquired property to River Place Community Urban Redevelopment Corporation ("River Place") for redevelopment.

Defendant is the owner of a parcel of real property located within the area declared blighted by Resolution 135X–80. Defendant's property consists of a lot measuring approximately eighty-five feet by forty-five feet, on which is located a three-story brick building containing approximately twenty rooming house units.

In June 1985, defendant's predecessor-in-interest, AAAA Enterprises, Inc., brought an action against the city seeking a declaratory judgment that the area in which its property was located had been improperly declared a "blighted area" under R.C. 1728.01(E), as well as a permanent injunction against the city's appropriation of its property. Following two appeals to this court and one appeal to the Ohio Supreme Court, both of these issues were resolved in the city's favor. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 553 N.E.2d 597, affirming (Sept. 22, 1988), Franklin App. No. 87AP–876, unreported, 1988 WL 99351; on appeal following remand, (1991), 74 Ohio App.3d 170, 598 N.E.2d 711.

On March 27, 1990, the city filed a petition to appropriate defendant's property. Defendant filed his initial answer on May 24, 1990, and on May 27, 1992, filed an amended answer setting forth ten defenses to the city's appropriation of his property; the city responded with a motion seeking to have defendant's defenses stricken on the basis of *res judicata.* The trial court granted the city's motion, and thus determined that the city properly could appropriate defendant's property.

Following a jury trial to determine the compensation owed to defendant for the loss of his property, the jury returned a verdict awarding defendant $410,000 as fair-market value of his property.

Defendant appeals both the appropriation and compensation aspects of the trial court's judgment, assigning the following errors:

"1. Error of trial court quashing deposition of builder-developer based on *res adjudica* [*sic*] decision in that decision cannot be a mandate for the parties for events that can or will occur with new facts by the parties after the decision. Specifically they are as follows:

"a. In 1992 developer was in default of his agreement to develop,

"b. in 1992 developer did not have the financial means to carry out the purchases of the land or the financing in place after 12 years to construct the redevelopment,

"c. in 1992 developer was taking land for parking investment purposes and had constructed nothing in 12 of the 20 years, thus causing land to be transferred from present landowners to another private landowner(s)

"2. Misconduct of witness expert for city using illegal and improper appraisal methods

"3. Verdict against the manifest weight of the evidence

"4. Misconduct of trier by *not* allowing jury to (1) take notes and (2) to have for review a method to refresh their memories of trial hearing facts

"5. Trial court confusion on the law and thereby causing the jury instructions to be in error and causing error by failure to properly instruct jury when jury had an at law question

"6. Ineffective assistence [*sic*] of counsel to subpoena plaintiff's other appraisals to show city and builder's improper and illegal appraisal methods of prior land taking to impeach and discredit plaintiff at trial

"7. Misconduct of trial court in not allowing the discharge of defendant counsel

"8. Ineffective assistence [*sic*] of counsel for not admitting into evidence for the jury, defendant's proposed building model

"9. Ineffective assistance of counsel and trial court error in not allowing a view by jury of other actual similar already built buildings that were similar to defendant's proposed building

"10. Misconduct of trial court and ineffective assistence [*sic*] of counsel to apply for a cease and desist order and to grant same while plaintiff threatened

defendant with criminal actions in order to gain an advantage in this civil action." (Emphasis *sic*.)

Defendant's first assignment of error is presented in the context of the trial court's refusal to permit the deposition of River Place's owner, Bernard Schottenstein. However, the crux of defendant's argument is that the trial court erroneously found each of his ten defenses to the city's proposed appropriation to be barred by the doctrine of collateral estoppel.

Preliminarily, we note that the lower court, as well as the parties, refer to the city's argument as *res judicata;* while this is not incorrect, collateral estoppel more precisely describes the doctrine applicable in this case.

■■■ The term *res judicata* technically encompasses both the doctrines of claim preclusion and issue preclusion. See *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437, 254 N.E.2d 10, 12. However, in ordinary use, the term *res judicata* generally refers to the doctrine of claim preclusion, while the term collateral estoppel refers to the doctrine of issue preclusion. See *Migra v. Warren City School Dist. Bd. of Edn.* (1984), 465 U.S. 75, 77, 104 S.Ct. 892, 894, 79 L.Ed.2d 56, 59, fn. 1. *Res judicata* (claim preclusion) bars the relitigation of the same cause of action between the same parties. *Karam v. Allstate Ins. Co.* (1985), 27 Ohio App.3d 137, 139–140, 27 OBR 169, 171, 500 N.E.2d 358, 361. Collateral estoppel, on the other hand, precludes the relitigation of an issue that actually and necessarily has been litigated and determined in a prior action based on a different cause of action. *Whitehead, supra.*

■■■ Because the prior action brought by defendant was an action for injunction and declaratory judgment and the current action is for appropriation, the doctrine of *res judicata* (claim preclusion) does not apply in this case. However, to the extent defendant's defenses raise issues which were or should have been litigated in his prior action for injunctive and declaratory relief, these defenses are barred by the doctrine of collateral estoppel. *DiPaolo v. DeVictor* (1988), 51 Ohio App.3d 166, 171, 555 N.E.2d 969, 974.

Defendant's prior action raised two issues: (1) whether the area in which defendant's property is located was properly declared a "blighted area," and (2) whether any future appropriation of defendant's property located in the "blighted area" in furtherance of the urban renewal plan would amount to an unconstitutional taking of private property for a *private* use as a result of the city's plan to sell the appropriated property to private developers. Defendant's first, third, fifth, sixth, seventh, eighth and tenth defenses raise precisely the same two issues. Therefore, those seven defenses were properly found to be barred by the doctrine of collateral estoppel.

Defendant's second, fourth and ninth defenses raise the issue of whether the city's appropriation of defendant's property is "necessary," an issue which neither was nor could have been raised in the prior action and thus is not barred by the doctrine of collateral estoppel.

■ Nonetheless, the trial court properly struck defendant's defenses relating to that issue, albeit for the wrong reason. Specifically, R.C. 163.08 states, in pertinent part, as follows:

" * * * The agency's right to make the appropriation, the inability of the parties to agree, and *the necessity for the appropriation shall be resolved by the court in favor of the agency unless* such matters are specifically denied in the answer and *the facts relied upon in support of such denial are set forth therein* * * *." (Emphasis added.)

Since defendant's answer lacks any facts to support denial of the city's claim of necessity, the city is entitled to judgment on the issue of necessity based upon defendant's failure to properly plead his defenses. See *Ohio Edison Co. v. Consol. Rail Corp.* (1984), 20 Ohio App.3d 307, 308, 20 OBR 408, 409, 486 N.E.2d 103, 104. Defendant's first assignment of error is overruled.

Defendant's remaining assignments of error relate to the compensation aspects of the trial court's judgment. In particular, defendant's third and fifth assignments of error raise the issue of the standard to be used in valuing defendant's property.

In testifying on the issue of the value of defendant's property, the city's expert appraiser stated that the "highest and best use" of defendant's property was as a speculative investment property, given the likelihood of future development in the surrounding area, and that the best "interim use" of defendant's property was as an office building. Further, when asked to place a value on defendant's property, the city's appraiser stated that the property had a value of $236,000 at its "highest and best interim use." Defendant's expert, by contrast, set the "highest and best use" of the property to be for speculation, and valued the property at $800,000.

Generally, "[c]ompensation for land taken for public use is determined by fair market value of the property on the date of taking * * *." *Masheter v. Ohio Holding Co.* (1973), 38 Ohio App.2d 49, 53, 67 O.O.2d 262, 264, 313 N.E.2d 413, 415. In defining fair market value, this court explained:

"Fair market value is the amount of money which could be obtained on the open market at a voluntary sale of the property. It is the amount that a purchaser who is willing, but not required to buy, would pay and that a seller who is willing, but not required to sell, would accept, when both are fully aware and informed of all circumstances involving the value and use of the property.

Market value is determined by the most valuable and best uses to which the property could reasonably, practically, and lawfully be adapted which is referred to as 'the highest and best use.' " *Id.* at 53, 67 O.O.2d at 264–265, 313 N.E.2d at 416.

■ Under the foregoing parameters, the city's expert employed an improper standard in valuing the property according to its "highest and best *interim* use," rather than its "highest and best use." Defendant, however, raised no objection to the admission of the testimony at trial.

■ At the close of the trial, the trial court instructed the jury on the legal standard to be used in determining the value of defendant's property. Despite the technical correctness of this jury instruction insofar as it defined fair-market value to be the "highest and best use" in accordance with *Masheter,* the instruction as a whole was somewhat confusing in its mixed references both to present and to future possible uses. Specifically, the trial court instructed:

"There is evidence of possible changes that may take place in the future commercial development. This evidence may be considered only if you find that possible future uses are sufficiently probable that they reflect upon the value of the land as it exists today.

"The evidence of the existing business operations on the premises and of future, possible business uses may be considered in determining the fair market value of the premises. However, the owner is compensated only for the land and building.

"In this case you became acquainted with the nature, the condition, and the present and possible future uses of the property. You heard opinions of its value. You must consider these facts along with all the evidence, and arrive at an amount that is fair, just and reasonable without prejudice or sympathy for either party."

In light of the confusing testimony from the experts, as well as the jury instructions which seem to suggest that the interim use may be a "present" use worthy of consideration, questions from the jury perhaps could be anticipated. Indeed, shortly after beginning deliberations, the jury returned a series of questions to the court. The second question asked, "Is the highest possible use only the interim or future ultimate use too?" The trial court's response to the question instructed the jury to "Please read the written instructions."

The jury's question reflects a confusion regarding the appropriate legal standard for determining fair-market value. Even though the jury's question presented a legitimate question of law based on the evidence before it, the trial court's response to the jury's question did not guide the jury or clarify the issue.

Defendant's counsel did not object to the trial court's response to the jury's questions. Defendant, however, attempted an objection, stating "I'm objecting to the comments he [the judge] makes. And I object to the third [*sic*][1] comment the judge makes, and that there's still confusion in the jury instructions in the—when they ask the question of highest and best use, the jury—."

Defendant's failure to object to the city's expert testimony on "interim use" during trial did not relieve the trial court of its inherent duty to make certain that the jury clearly understood the correct legal standard to be applied, especially in light of defendant's attempt to note the error. Like the jury instructions themselves, a trial court's response to the jury's question regarding matters of law should not only be legally correct, but also should be so explicit as not to be misconstrued or misunderstood by the jury in the proper application of the law to the facts in evidence. See *Gallagher v. Cooper* (1984), 14 Ohio St.3d 41, 43–44, 14 OBR 438, 440, 471 N.E.2d 468, 470; *Aetna Ins. Co. v. Reed* (1877), 33 Ohio St. 283, 295.

In this case, all witnesses agreed that the highest and best use for the property was speculation, or holding the property for future development. Since the jury's function is to resolve disputed factual issues, the jury in this case did not need to consider the issue of highest and best use, given the lack of factual dispute on the issue. As a result, the trial court should have instructed the jury that the highest and best use was speculation, then submitted for the jury's consideration the value of the property at the time of trial, given that use. Even if defendant did not object to the instructions as given, on proper objection at the time of the jury's questions, the trial court should have clarified the matter.

In combination with the foregoing, we note that defendant, prior to closing argument, attempted to discharge his counsel. While the trial court retains some discretion to refuse a party's request to change counsel which necessarily will cause delay or other prejudice to the opposing party, defendant herein apparently sought to discharge counsel and represent himself, with no delay accruing as a result of his decision. Under the unusual circumstances of this case, we are unable to ascertain any reason defendant should not be able to discharge the counsel he engaged.

As a result of defendant's attempt to discharge counsel, which the trial court refused, a mutual approach to trial strategy between defendant and his counsel

---

1. Given that it was the judge's second rather than third response which addressed the jury's question regarding the "highest and best use" standard, defendant apparently misspoke when he referred to the judge's "third" comment. In any event, however, the remainder of defendant's statement is sufficient to constitute an objection to the judge's response to the jury's question regarding "highest and best use."

was lacking at the time the jury's deliberation questions arose. Given the presence of counsel, the trial court apparently ignored defendant's attempted objection to the response. Absent defendant's attempt to discharge counsel, defendant would be deemed to speak through counsel and to have waived objection to the trial court's response to the jury's question. However, under the somewhat unique circumstances of this case, the trial court's refusal to allow defendant to represent himself, coupled with the trial court's resulting failure to note defendant's objection and to eliminate the confusion arising from the jury instruction, was error.

The issue then resolves to whether the error was prejudicial. The jury's verdict was $410,000, whereas the evidence gave the jury only one figure to consider regarding the undisputed highest and best use for the property: $800,000 posited by defendant's expert. The jury's question, however, suggests the jury was influenced by the irrelevant evidence regarding interim use posited by the city and potentially compromise the values given by the city's expert and defendant's expert; we cannot know to what extent. While the only evidence of "highest and best use" was $800,000, the jury was not required to accept that testimony, although their verdict suggests they believed it to some degree. Combining the foregoing considerations with the confusion explicitly expressed in the jury's question, we are compelled to conclude that a different verdict would have been rendered absent the confusion about the appropriate standard for determining fair-market value; thus reversal is appropriate. See *Little Miami RR. Co. v. Wetmore* (1869), 19 Ohio St. 110, 134. Defendant's third and fifth assignments of error are sustained to the extent indicated herein.

Our disposition of defendant's third and fifth assignments of error renders defendant's second, fourth, sixth, seventh, eighth, ninth and tenth assignments of error moot; therefore, we need not address them. Without addressing the merits thereof, we overrule those assignments of error pursuant to App.R. 12(A)(1)(c).

Having overruled defendant's first, second, fourth, sixth, seventh, eighth, ninth and tenth assignments of error, but having sustained defendant's third and fifth assignments of error, the judgment of the trial court is affirmed in part and reversed in part and the cause is remanded for further proceedings in accordance herewith.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

WHITESIDE and BOWMAN, JJ., concur.