OPINION
This accelerated calendar appeal submitted on the briefs of the parties emanates from the judgment of the Mentor Municipal Court, awarding appellants, Donald C. and Dorothy M. Welsh, ("Mr. and Mrs. Welsh") $4,684.15 plus costs and interest, following a jury trial.
On August 28, 2000, appellants filed a complaint against appellee, Minord Yoshida, alleging negligence, loss of consortium, property damage, and personal injury stemming from a motor vehicle collision. Appellee ultimately stipulated to liability, and the matter proceeded to a jury trial on the issue of damages.
On January 25, 2001, the jury rendered a verdict in favor of appellants in the amount of $4,684.15.[1] Accordingly, the trial court accepted the jury verdict in a judgment entry dated January 26, 2001.
Appellants now appeal the damage award, advancing two assignments of error for our consideration:
 "[1.] The judgment of the trial court as based upon the jury's verdict is contrary to law and should be reversed, in that the jury failed to follow the express instructions of the court.
 "[2.] The trial court judgment should be reversed as it was against the manifest weight of the evidence."[2]
Because the first and second assignments of error are interrelated in that they both challenge the award of damages, we will consolidate these assignments of error for purposes of analysis and resolution.
Under these assignments of error, appellants maintain that the jury failed to follow the instruction provided by the trial court on the issue of how to calculate damages because the jury returned a verdict in the amount of $4,684.15, which seemingly represented the repair costs.[3]
From this, appellants conclude that the jury inappropriately awarded the cost of repairs as the measure of damages rather than the difference in the fair market value of the vehicle prior to and after the accident.
Appellants further contend that the jury failed to grant them adequate damages; as such, the award of damages in the amount of $4,684.15 was against the manifest weight of the evidence. According to appellants, even though they presented testimony concerning the fair market value of the vehicle before and after the collision, the jury erroneously awarded them the cost of repairs, to wit: $4,684.15, as the measure of damages rather than the depreciation resulting from the collision.[4]
Appellee counters by conceding to the fact that the repair estimate of $4,684.15 was, indeed, the amount awarded to appellants by the jury. Nevertheless, appellee concludes that the cost of repairs is an acceptable method of determining damages.
In viewing the instant cause, we are mindful of the fact that a judgment that is "`supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" (Citation omitted). Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80.
The following testimony was admitted at trial. Mr. Welsh testified that prior to the accident, the mileage on his 1997 Pontiac Trans Sport van was 18,000, and the vehicle was only twelve or thirteen months old. Subsequent to the accident, appellants choose not to repair the vehicle; rather, in its damaged state, they traded in their vehicle for $11,500 and eventually purchased another vehicle.[5]
Before trading in the vehicle, Mr. Welsh obtained two estimates from Pike's Carstar Collision. The original estimate was prepared by Mr. Tiedman, who valued the repairs at $4,684.15. According to Mr. Welsh, "that estimate was on the basis of using salvage parts of other wrecked vehicles to put our van back together." In contrast, the second estimate was prepared by Douglas Pike ("Mr. Pike"), the owner of Pike's Carstar Collision, who valued the repairs at $5,616.25. This estimate was based on utilizing new parts to repair the vehicle.
According to Mr. Welsh, both of the estimates provided by Pike's Carstar Collision did not include possible damage to the floor board and door post. In fact, Mr. Pike stated that in repairing the vehicle he "would have anticipated some pillar and some floor damage[,]" which was not reflected in the prepared estimates.
Finally, Mr. Pike, as well as James J. Setele ("Mr. Setele"), opined that if the vehicle had been repaired, it would cosmetically look the same and be in compliance with manufacturer specifications.[6]
However, the vehicle would not have the same value it had prior to the accident.
Appellants also presented evidence concerning the fair market value of the vehicle prior to the collision. For instance, Mr. Welsh testified that based on the National Automobile Dealers Association ("NADA") guidebook, he believed that the average retail value of his pre-accident vehicle was $21,725. However, Mr. Welsh believed that his vehicle was in superior condition because he had it serviced regularly at the Quality Auto Group dealership and had the vehicle detailed twice a year. From this, Mr. Welsh concluded that his pre-accident vehicle was worth $22,725.
As for the value of the vehicle immediately following the accident, Mr. Welsh opined that the trade-in value was $14,000:
 "Q. The question I have is: What would you have gotten, do you have any idea, if it was traded in in a damaged state?
 "A. I would have in my opinion I would have gotten somewhere in the neighborhood of around $14,000.00."
Mr. Setele, testified that he prepared a letter for appellants wherein he set forth the following wholesale values for the vehicle: the pre-accident average wholesale value of the vehicle based on the NADA guidebook was $19,150; post-accident wholesale value of the vehicle was $11,500; and wholesale value of the vehicle if repairs were made was $16,800.[7]
Mr. Setele also confirmed that the average retail value of the vehicle, according to the NADA guidebook, was $21,725. In light of this and the seemingly above average condition of appellants' vehicle, Mr. Setele opined that the retail value of the pre-accident vehicle was between $21,500 and $22,725.
As for the value of the vehicle following the accident, Mr. Setele indicated that in a damaged state, the wholesale value of the vehicle was $11,500.[8] While Mr. Setele conceded that there is a market for a retail value of a damaged vehicle, he was not aware of it:
 "Q. Okay. Just so we have it clear, what would you state the retail value of this car is just prior to its accident?
"A. $21,725.00
 "Q. A minute after the accident what's the value of the car, what's the most they can get for it in its damaged state?
 "A. On a wholesale basis, $11,500.00, as per my writing.
 "Q. Okay. Is there a normal retail market out there that you're aware of for wrecked cars?
 "A. Not that I'm aware of. I'm sure such a market exits [sic], but I'm not aware of it.
"* * *
 "Q. And you are not aware of the market, of any market like that existing?
 "A. Not a specific market, no, sir. I'm sure it's provided somebody with an opportunity, though."
 At the close of all the evidence, the trial court provided the jury with the following instruction on how to calculate damages:
 "* * * If you find for the Plaintiff, you will determine an amount of money that will reasonably compensate the Plaintiff for the damage to the vehicle. The measure of damage which you apply is the difference in the fair market value of the vehicle immediately before and immediately after the collision. You may consider the reasonable costs of necessary repairs as evidence of the reduction in fair market value. The measure of damage, however, is the difference in the fair market value of the vehicle immediately before and after the accident.
 "Such difference may not be made greater by [appellants'] actions. * * * "[9] (Emphasis added)
As to this point, the Tenth Appellate District had an opportunity to comment on the issue of calculating damages:
 "While the usual measure of damages for a vehicle involved in an automobile accident is the difference between the fair market value of the car before and after the accident, an alternative method, the cost of repair, is an acceptable measure of damages if the cost of repair does not exceed the diminution in market value or the fair market value of the vehicle before the accident." (Emphasis added.) Allstate Ins. Co. v. Reep (1982), 7 Ohio App.3d 90, paragraph one of the syllabus. See, also, Falter v. Toledo (1959), 169 Ohio St. 238, paragraphs one and two of the syllabus.
In light of the following propositions of law, we must define a number of key terms. For instance, "fair market value" otherwise known as "retail value" is defined as that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on theopen market. Wray v. Stvartak (1997), 121 Ohio App.3d 462, 471; Masheterv. Ohio Holding Co. (1973), 38 Ohio App.2d 49, 54; Huntington Nat. Bankv. Elkins (Apr. 18, 1989), Franklin App. No. 88AP-597, unreported, 1989 WL 36592, at 4.
In comparison, "wholesale value" is:
 "measured similarly to retail value except that the market is different. With wholesale value, the willing seller may be a manufacturer, a supplier, or an individual, while the willing buyer is usually a retailer who plans to resell the vehicle for the current retail value. Wholesale value then becomes an amount this willing wholesale seller will accept and which the willing wholesale buyer will pay." (Emphasis added.) Huntington at 4.
Additionally, "trade-in value" has a similar market to wholesale value in that it represents the amount a seller may receive from a retailer who is attempting to make a sale to the seller.
On appeal, appellants claim that the jury's verdict is against the manifest weight of the evidence because the jury awarded repair costs as damages rather than the difference in the value of the vehicle prior to and after the collision. Indeed, the jury's verdict awarded appellants the exact sum of repair costs, but no more. However, we do not view the award as conclusive evidence that the jury failed to follow the trial court's instruction, and we cannot conclude that the jury's award is unsupported by the record.
In accordance with Allstate and Falter, supra, it was appropriate for appellants to seek the difference in the market value of the vehicle before and after the collision. While appellants introduced evidence as to the fair market value of the pre-accident vehicle, they failed to present evidence illustrating the retail or fair market value of the vehicle after the collision. Rather, appellants opted to introduce the wholesale value of the vehicle following the accident.
"The fair market value is the primary method of calculating damages when considering negligent damage to automobiles; when there is noevidence regarding the difference between the fair market value of an automobile immediately before and immediately after a collision, the cost of repair may be used as a secondary method of assessing damages." (Emphasis added.) Ehrich v. Eldridge (Sept. 20, 1995), Summit App. No. 17089, unreported, 1995 Ohio App. LEXIS 4155, at 5.
As mentioned earlier in this opinion, appellants presented evidence tending to show that the retail value of the vehicle immediately before the collision was between $21,500 and $22,725. However, appellants failed to demonstrate the fair market or retail value of the vehicle immediately after the accident.
"It was appellant[s'] burden to prove damages the difference between the [vehicle's] market value immediately before and immediately after the collision or the reasonable cost of repairing the [vehicle]." Walls v.Wildermuth (Nov. 19, 1998), Franklin App. No. 98AP-400, unreported, 1998 Ohio App. LEXIS 5599, at 5. While appellants traded in their vehicle in a damaged state to Mr. Setele for $11,500, there was no evidence tending to show that this figure represented the fair market or retail value of the vehicle following the accident. Rather, Mr. Setele opined that thewholesale value of the vehicle immediately after the collision was $11,500, and Mr. Welsh indicated that the damaged vehicle's trade invalue was $14,000. Under these particular circumstances, it was not against the manifest weight of the evidence for the jury to award appellants' the cost of repairing the vehicle.
Further, there is a presumption that a jury will follow the instructions given by the trial court. Pang v. Minch (1990),53 Ohio St.3d 186, 195. Here, the jury was instructed that it "may consider the reasonable costs of necessary repairs as evidence of the reduction in fair market value."[10] In fact, pursuant to Allstate,supra, cost of repairs is an adequate measure of damages when there is no evidence as to the difference in the fair market value of the vehicle before and after the collision and where there is no objection to the absence of evidence as to the diminution of fair market value.[11]
Hence, we conclude that there is no evidence tending to show that the jury failed to follow the instructions supplied by the trial court.
Based on the foregoing analysis, appellants' first and second assignments of error are without merit. Accordingly, the judgment of the trial court is affirmed.
FORD, P.J., GRENDELL, J., concur.
[1] The jury did not award damages to Mrs. Welsh as to her claim for personal injuries or to Mr. Welsh for his loss of consortium claim. This, however, is not presented as an issue on appeal.
[2] On December 20, 2001, this court issued a judgment entry in which we indicated that a review of the record on appeal revealed that trial exhibits were admitted into evidence; however, they were not made part of the record. The parties supplemented the record with various copies of trial exhibits. As a result, on January 11, 2002, we issued a judgment entry remanding this matter to the trial court for the purpose of the trial court to verify that the copies of exhibits to be supplemented were identical to the exhibits that were admitted during the jury trial.
On January 23, 2002, the trial court issued a judgment entry complying with our request and indicating that while the parties stipulated to the authenticity of certain trial exhibits, other exhibits could not be reproduced. Therefore, we will determine this appeal with the supplemented exhibits.
[3] In the instant matter, appellants do not challenge the propriety of the instruction given by the trial court. In fact, neither party objected to the jury instruction at the trial court level.
[4] On appeal, appellants do not contend that the $4,684.15 repair estimate was unreasonable. As such, we will limit our analysis accordingly.
[5] There was some conflicting testimony as to whether appellants traded in or sold their vehicle to Mr. Setele.
[6] Mr. Setele is the vice-president/general manager of Quality Auto Group.
[7] The following exchange took place on recross-examination of Mr. Setele:
 "Q. Mr. Setele, in your letter you set forth wholesale figures for the vehicle; correct?
"A. That's correct.
 "Q. And you felt that in your opinion those are the appropriate figures to use to discuss whether or not Mrs. Mr. and Mrs. Welsh sustained any damage and, if so, the amount of damages they sustained; correct?
"A. That's correct.
"Q. You didn't use retail figures; did you?
A. No, I did not."
[8] The following exchange took place on direct examination:
 "Q. Okay. What would you say the value of that vehicle was in its damaged state?
 "A. In the damaged state we were we were appraising it at $11,500.00.
 "Q. Okay. Now at 11,500, when you have a wrecked vehicle, is it wholesale, retail, or is it what would you call it?
 "A. Well, it's going to be it's going to be the wholesale the wholesale value of the vehicle in its in that present state.
 "Q. Is there a retail value to a wrecked vehicle that would be more?
 "A. I'm sure there are markets for that type of thing, but that's not what that's not something that I do." (Emphasis added.)
[9] This jury instruction is identical to the instruction provided in 1 Ohio Jury Instruction (2001) 216, Section 23.40.
[10] Jury interrogatories were not utilized in this case.
[11] When evidence regarding the cost of repairs is introduced without objection to the absence of evidence concerning the diminution of market value, "the objection to the absence of market-value evidence has been waived." Allstate at 91. See, also, Nationwide Ins. Co. v. Keaton (Apr. 4, 1991), Cuyahoga App. No. 58337, unreported, 1991 WL 45562, at 3.