DECISION
Relator, Steven E. Underwood, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for permanent total disability ("PTD") compensation and to enter an order finding that he is permanently and totally disabled.
This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
Relator argues the commission's finding that he abandoned his job because he felt he had no authority as a supervisor is barred by the doctrine of res judicata. Relator points out that the commission had previously determined in its September 5, 2000 order that he did not abandon his job because his absence from work was due to his injury. The issue-preclusion branch of the res judicata doctrine operates to collaterally estop a party from drawing into question in a second action a point or fact that was actually and directly in issue in a former action, and was there passed upon and determined by a court of competent jurisdiction. See Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379.
In the commission's September 5, 2000 order, although the staff hearing officer commented that relator's absence from work was due to his injury, such issue was not a point or fact that was actually and directly in issue in the former action. In the September 5, 2000 order, the employer's only argument to support its claim that relator voluntarily abandoned his job was that relator knew or should have known the terms of the company work rule that an absence be timely reported to the employer and relator violated this rule. Whether relator's absence from work was, in fact, due to his injury was not directly or actually at issue in the prior action and not litigated. Therefore, we find the magistrate did not err in finding that res judicata did not apply to the present case.
Relator also argues that the commission's analysis of the nonmedical disability factors was flawed due to its failure to discuss relator's work history and its impact on relator's ability to locate sedentary work. However, relator presents no supporting argument in his objections with regard to this issue, and we find no error in the magistrate's determination and reasoning on such. This argument is without merit.
After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
TYACK, P.J., and LAZARUS, J., concur.
 IN MANDAMUS
In this original action, relator, Steven E. Underwood, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
1. On May 20, 1999, relator sustained an industrial injury while employed as a maintenance manager for respondent Sterling Grinding Company, Inc. ("Sterling"). The industrial claim is allowed for "herniated disc L4-5; left leg sciatica," and is assigned claim No. 99-405943.
2. On May 19, 2000, the Ohio Bureau of Workers' Compensation ("bureau") moved for termination of temporary total disability ("TTD") compensation on two grounds: (1) that the industrial injury had reached maximum medical improvement ("MMI"), and (2) that relator's termination from his employment at Sterling constituted a voluntary abandonment of his employment.
3. Following a July 26, 2000 hearing, a district hearing officer ("DHO") granted the motion to terminate TTD compensation on grounds that the industrial injury had reached MMI as of May 10, 2000, the date relator's treating doctor opined that the condition had become permanent. The DHO further states:
 Concerning the issue of voluntary abandonment of employment, this District Hearing Officer finds the employer has failed to establish such an abandonment occurred in accordance with requirements articulated in the Louisiana Pacific case.
 Specifically, this District Hearing Officer finds the employer has failed to establish that the claimant knew, or should have known, that his failure to report for work on 5/11/00 and 5/12/00 would result in his termination. While the employer did submit a provision from its company policy/handbook which states that a failure to report for work, or being absent without reporting, is grounds for termination, the employer did not establish that the claimant knew, or reasonably should have known, of the terms of this policy.
 Further, and more significantly, according to the testimony at hearing by Mr. Losasso, the claimant did report his absence on 5/4/00 to Mr. Losasso by telephone and documents in the file, specifically the employer's letter of 5/15/00 and the C-84 reports from Dr. Hood, dated 5/15/00, indicate the claimant and/or his girlfriend had contacted the employer during the period between 5/4/00 and the claimant's termination on 5/17/00 informing the employer the claimant was again totally disabled from his employment. While the medical validity of this disability may be debated by the employer, the District Hearing Officer finds, in the context of a voluntary abandonment argument, that, as the claimant had Dr. Hood's disability certifications prior to his termination on 5/17/00 and these certifications extended beyond 5/17/00, the claimant is assumed to have presumed his absence from work during this period was reported.
4. Sterling administratively appealed the DHO's order of July 26, 2000. Following a September 5, 2000 hearing, a staff hearing officer ("SHO") affirmed the DHO's order. The SHO's order states in pertinent part:
 Concerning the issue of voluntary abandonment of employment, the Staff Hearing Officer finds that employer has failed to establish such an abandonment occurred in accordance with requirements articulated in the Louisiana Pacific case.
 Specifically, this Staff Hearing Officer finds the employer has failed to establish that the claimant knew, or should have known, that his failure to report for work on 05/11/00 and 05/12/00 would result in his termination. While the employer did submit a provision from its company policy/handbook which states that a failure to report for work, or being absent without reporting, is grounds for termination, the employer did not establish that the claimant violated this work policy.
 At hearing the claimant testified that he called Mr. Lasso [sic] at home and spoke to his wife and informed that claimant would not be present because of his back injury. Claimant testified it was the company's policy to inform the employer that an employee would not be in and to tell them when he/she was returning. The claimant's significant other testified that she spoke to the president of the company on 05/10/00 and told her that claimant had an appointment and told her of his appointment. After the appointment the doctor faxed a letter (C-84) to the employer and informed the employer claimant would not be returning to work due to the injury.
 The Staff Hearing Officer finds that claimant did not abandon his employment. The employer was aware that claimant was off work due to the injury. The Staff Hearing Officer does not find this is not an abandonment of employment [sic].
5. On July 25, 2000, relator filed an application for PTD compensation.
6. On November 17, 2000, at the commission's request, relator was examined by orthopedist, Robert Turner, M.D. Dr. Turner issued a report stating that relator cannot return to his former position of employment but that he can perform sustained remunerative employment. Dr. Turner also completed an Occupational Activity Assessment form.
7. The commission requested an Employability Assessment Report from Brian L. Womer, a vocational expert. Mr. Womer issued his report on January 2, 2001.
8. In support of his PTD application, relator submitted a vocational report from Julie Morrissey, dated January 8, 2001. Morrissey opined:
 * * * [A] consulting physician for the OIC, Dr. Turner, has opined him capable of a restricted range of sedentary work with only occasional seizing, holding grasping and turning of objects. The vast majority of sedentary jobs of an unskilled nature are production-oriented. This means that they require the ability to handle objects on a frequent to continuous basis to assemble or inspect objects or operate small machines. Those limited numbers of jobs which are non-production oriented are more of a clerical nature and require good basic literacy skills which the claimant does not possess. * * *
 Based on Mr. Underwood's age, limited education, past relevant work with no transferable skills, and major physical problems with resulting limitations, he is not a candidate for a significant number of jobs existing either locally, regionally or nationally.
9. Following a March 6, 2001 hearing, an SHO issued an order denying relator's PTD application. The SHO's order states:
 The claimant is 43 years old and has a 10th grade education. His most recent job was as a maintenance manager for 11 years. Before that he worked as an orderly in a nursing home, a grinder in a glass factory, a plumbing and heating laborer, a foundry worker, a machine operator. He last worked on 05/04/2000 approximately one year after the injury. The claimant had two lumbar surgeries as a result of the injury.
 The claimant was examined for the allowed "herniated disc L4-5, left leg sciatica" on 11/17/2000 by Dr. Robert Turner, orthopedist, who found that the claimant cannot return to his former position of employment but can perform sustained remunerative work activity.
 Based on the specific findings on the occupational assessment, which accompanies the report, Dr. Turner would limit the claimant to sedentary work.
 The claimant has never done sedentary work previously, therefore, the issue becomes what effect the claimant's disability factors would have on the claimant obtaining sedentary work.
 The claimant's age of 43 is a definite asset for re-employment. The claimant will have many years remaining to devote to a potential employer. At the claimant's age, it is worthwhile for an employer to spend money on providing in-house training to the claimant. The claimant will also be more adaptable to new ideas and new ways of doing things due to his age.
 Regarding the claimant's 10th grade education, the Staff Hearing Officer finds that to be sufficient to allow the claimant to participate in training courses for basic entry level positions. The claimant can do basic reading, writing, and math. He took a written driving test. He filled out his Permanent Total Disability application form in a competent legible manner. In his last job as a maintenance manager, the claimant was able to read booklets about various machines that he had to repair.
 Regarding the claimant's previous jobs, it is significant that after his injury, the claimant's employer gave him a job as a supervisor and parts inspector. In this job he did not have to lift over one pound and did not have to do any actual repairs as he used to do as a maintenance manager. From testimony at hearing, the Staff Hearing Officer finds that the claimant was able to do the job as an inspector and only stopped the job because he felt he had no authority as a supervisor.
 Therefore, the Staff Hearing Officer finds that the claimant is able to obtain or be retrained for sedentary sustained remunerative employment. The claimant is not permanently and totally disabled based on the report of Dr. Turner and the disability factors just discussed.
10. On August 13, 2001, relator, Steven E. Underwood, filed this mandamus action.
Conclusions of Law:
 Two issues are presented: (1) whether the doctrines of res judicata or collateral estoppel preclude the commission's finding that relator was able to perform the supervisor/inspector job but failed to continue the job for reasons unrelated to his industrial injury, and (2) whether the commission's order is deficient under State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203 in addressing relator's work history.
The magistrate finds: (1) that doctrines of res judicata or collateral estoppel did not preclude the commission's finding that relator was able to perform the supervisor/inspector job but failed to continue the job for reasons unrelated to the industrial injury, and (2) the commission's order is not deficient under Noll, supra, in addressing relator's work history.
Turning to the first issue, it is well settled that the doctrine of res judicata is applicable to administrative proceedings before the commission. State ex rel. Crisp v. Indus. Comm. (1992), 64 Ohio St.3d 507, and State ex rel. Kroger v. Indus. Comm. (1998), 80 Ohio St.3d 649.
The term res judicata technically encompasses the doctrines of claim preclusion and issue preclusion. Columbus v. Triplett (1993),91 Ohio App.3d 239, 243. However, in ordinary use, the term res judicata generally refers to the doctrine of claim preclusion, while the term collateral estoppel refers to the doctrine of issue preclusion. Id. Res judicata (claim preclusion) bars the relitigation of the same cause of action between the same parties. Id. Collateral estoppel precludes the relitigation of an issue that actually and necessarily has been litigated and determined in a prior action based on a different cause of action. Id.
As the commission's orders of July 26, 2000 and September 5, 2000 disclose, one of the issues presented to the commission on the motion to terminate TTD compensation was whether Sterling's termination of relator from his employment for an alleged violation of a written work rule constituted a voluntary abandonment of employment under the doctrine set forth in State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995),72 Ohio St.3d 401. The employer's claim of a voluntary abandonment was premised upon its allegation that relator had failed to comply with a company requirement that a work absence be timely reported to the employer.
In the proceedings before the commission, it was the employer's burden to meet the three-part test of Louisiana-Pacific. That test is expressed by the Louisiana-Pacific court as follows:
 * * * [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee. * * * [Id. at 403.]
The commission found that the employer had failed to meet its burden under the Louisiana-Pacific case. The commission found that the employer failed to establish that relator knew or should have known the terms of the company work rule. The commission also found that relator reported his absence to his employer on May 4, 2000, that his girlfriend contacted the employer on May 10, 2000 to inform of relator's doctor's appointment, and that relator's treating doctor faxed a C-84 to the employer informing that relator would not be returning to work.
Thus, the specific issue before the commission on the voluntary abandonment claim was whether the employer met the requirements of Louisiana-Pacific when the employer fired relator for violating its work rule that absences be reported.
In reaching its decision that the employer had failed to meet the Louisiana-Pacific requirements, the commission did not decide, nor was it necessary for it to do so, that relator's absence from work was in fact due to his industrial injury. The commission merely decided that relator did not fail to report his work absence.
Given the above analysis, it is clear that neither the doctrines of res judicata or collateral estoppel precluded the commission from finding in the subsequent PTD adjudication that relator was able to perform the supervisor/inspector job but failed to continue the job for reasons unrelated to his industrial injury.
As previously noted, the second issue is whether the commission's order is deficient under Noll, supra, in addressing relator's work history. In this regard, relator does not argue that the order fails to give an appropriate consideration to his age, education and other factors but contends only that the order fails to adequately discuss his work history. The magistrate disagrees with relator's contention.
To begin, there is no specific requirement that every aspect of a PTD applicant's work history be discussed in the order.
However, it is clear in this instance that the commission gave adequate consideration to the work history. The commission pointed to specific aspects of the work history that the commission felt would permit relator to obtain or retrain for sedentary employment. Nothing more was required.
Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.