CITY OF COLUMBUS, APPELLEE, *v.* FARM BUREAU
COOPERATIVE ASSOCIATION, INC., APPELLANT; BENNETT
ET AL., APPELLEES.

⌊Cite as Columbus v. Farm Bureau Cooperative Assn.
(1971), 27 Ohio App. 2d 197.⌋

(No. 71-32—Decided June 8, 1971.)

*Mr. John C. Young*, city attorney, *Mr. William J. Melvin*, and *Mr. Larry L. Johnson*, for plaintiff-appellee.
*& Newman, Mr. Peter J. Gee* and *Mr. Timothy J. Ucker*, for defendant-appellant.
*Mr. Nelson Lancione*, for defendants-appellees George

Bennett, Ruth Bennett and Louisville Bank for Coopera-
tives.

*Mr. George C. Smith,* prosecuting attorney, and *Mr.
William Holmes,* for defendant-appellee Philip H. Gold-
slager, Franklin County Treasurer.

*Per Curiam.* This is an appeal on questions of law by
defendant-appellant, hereinafter referred to as defend-
ant, the Farm Bureau Cooperative Association, Inc., from
a judgment of the Court of Common Pleas of Franklin
County, Ohio, rendered January 11, 1971.

The facts are that defendant owns a tract of
land of approximately 73 acres near the intersection of
Interstate 70 and Hamilton Road in Franklin County, Ohio.
This is a rectangular tract which has a drainage ditch run-
ning through it. More than 35 years ago, in 1934, plaintiff-
appellee, the city of Columbus, hereinafter referred to as
plaintiff, installed a large storm sewer culvert at one end of
the ditch. The waters which discharge from the culvert
drain naturally through it across defendant's land.

In this action, plaintiff is appropriating sufficient land
for a new and larger culvert. The discharge from the new
culvert will cause an increased flow through the ditch
crossing the remainder of defendant's tract. There is a
service road crossing the ditch, and an existing culvert
underneath it, owned and maintained by defendant. The
drainage ditch and private culvert on defendant's land
are now sufficient to accommodate the runoff from a severe
storm, draining through the existing outlet upon de-
fendant's property. When the new storm sewer outlet is
constructed, however, the ditch and culvert apparently
will not be capable of coping with the flow.

Defendant attempted, at trial, to present expert testi-
mony concerning the effects of the increased flow, and
further, to show that the existing ditch running through
its land would require improvement to confine the increas-
ed waters without flooding the land. The trial court ruled
that such evidence was inadmissible.

The actual value of the acreage taken by plaintiff (.41

acres) was stipulated by counsel as $5,600. Consequently, the jury assessed the value of the appropriation, including damages to the residue, for that amount.

Defendant's assignments of error I and II are inter-related and are considered together. They are as follows:

"I. The trial court erred in its refusal to allow appellant landowner to introduce expert testimony regarding damages which will occur to the remainder of appellant's tract from appellee's appropriation of 0.41 acres.

"II. The authorities relied upon by the trial court in its decision to exclude the expert testimony proferred [*sic*] by appellant were not appropriation cases and should not control the admission of evidence in the instant proceeding, especially in light of new Section 163.14, Revised Code."

Defendant contends that the changes contemplated to be made in the existing ditch by plaintiff, through providing an additional culvert, will so accelerate the flow as to cause flooding of its property. Only a small portion of defendant's property is taken for the improvement. It contends that in order to restore the value of the residue of its property, certain improvements will have to be made by it. Plaintiff contends that the cost of making such improvements is less than the depreciation in the market value of the residue caused by the improvement.

There is, apparently, no claim of any additional flow into the watershed, but the contemplated project is for the purpose of relieving a backup on an existing watershed without any diversion of additional water into the watershed, the problem being caused by an intensification of urban use, which has increased or accelerated the amount of water emptying into the existing ditch.

The law of Ohio appears clear that in the absence of a taking of any of defendant's property by plaintiff, the plaintiff could have increased the volume and accelerated the flow of the water in the ditch involved without incurring any liability to the defendant, the consequential damages in such a situation being *damnum absque injuria*. *Munn* v. *The Horvitz Co.* (1964), 175 Ohio St. 521. The trial

court, in the instant case, excluded all evidence of damages to the residue upon this basis.

Thus, the issue before this court is whether damages consequential to the construction of an improvement, which would be *damnum absque injuria,* in the absence of the taking of any of a property owner's property, become compensable damages to the residue where a portion of the property of such property owner is taken for the improvement.

Where property is taken for public use, the owner of the property so taken is entitled to be compensated therefor in money. Section 19, Article I, Ohio Constitution. Such compensation includes not only compensation to the landowner for the land actually taken, but, also, damages to the residue of the land of the landowner resulting from the taking and the improvement for which the taking is made. *Grant* v. *Village of Hyde Park* (1902), 67 Ohio St. 166.

While R. C. 163.14 provides that the jury shall assess the compensation and damages, if any, that section neither adds to nor detracts from the compensation (including damages to the residue) to which an owner of property taken for public use is entitled pursuant to Section 19, Article I, Ohio Constitution. Rather, R. C. 163.14 is merely a restatement of the constitutional requirement of compensation.

The damages to the residue which defendant contends it is entitled to, being *damnum absque injuria* in the absence of a taking, are not compensable damages to the residue in connection with the taking involved unless damages which are *damnum absque injuria* in the absence of a taking, become compensable damages in the event of a taking of a portion of an owner's property.

The second paragraph of the syllabus of *Smith* v. *Erie Rd. Co.* (1938), 134 Ohio St. 135, reads as follows:

"When there is no taking altogether or *pro tanto,* damages consequential to the taking of other property in the neighborhood, or to the construction of the improvement, are not recoverable; under such circumstances, loss

suffered by the owner is *damnum absque injuria.*" At pages 144-145 of the decision, there is the following stated:

"In the decisions of this court, reference has been made at times to consequential damages but in no instance has the right to them been recognized except when they have resulted from a taking. It is true damages to residue have been allowed where only part of the owner's property is appropriated (*Grant* v. *Village of Hyde Park*, 67 Ohio St., 166, 65 N. E., 891); but in such instances damages are allowed as a part of the compensation and not as consequential damages.

"* * *

"The conclusion is inevitable that in Ohio, if there is no taking there can be no recovery of consequential damages."

The *Smith* case implies that consequential damages for which no recovery could be had in the absence of a taking are a part of compensable damages to the residue in the event of an actual partial taking.

Paragraph five of the syllabus of *In re Appropriation for Highway Purposes* (1966), 6 Ohio App. 2d 6, reads as follows:

"The *privilege* of the owners of a motel property and their actual and potential customers, shared by them with the general public, of entering and leaving an abutting limited-access state highway through an intersection of same with a township road, and by way such township road reaching the motel property which has no *right* of direct access to and from that state highway, is an element entering fairly into the question of market value. This element must be taken into consideration in determining the market value of the motel property as of the time of the take of a part of it in the improvement of such state highway to an interstate highway. In such determination there must also be considered as an element of, and as affecting market value, the *right* which the state had prior to and at the time of the take to proceed, without compensation to the landowners, to alter the highway intersection in such manner as to leave no access from the township road to

the highway, or vice versa, resulting in circuity of travel between the motel property and the highway.''

At page 11, the following statement is made:

''Had the state of Ohio not taken any of the land belonging to appellants and/or had not changed the grade of Bible Road where it abutted appellants' land, the appellants would have had no recovery whatsoever by reason of the change of the intersection of Bible Road and U. S. Route No. 25, so that the former would no longer have access to the latter, and vice versa. But the moment the state took any of the appellants' land and/or caused damage thereto by the change of grade of Bible Road, the appellants were entitled, in the determination of compensation and damages, to have 'every element that can fairly enter into the question of value' considered, including the fact that the property was immediately but indirectly accessible to and from U. S. Route No. 25.''

See, also, *In re Appropriation for Hwy. Purposes* (1968), 13 Ohio App. 2d 125; *Masheter, Dir. of Hwys.*, v. *Yake* (1967), 9 Ohio App. 2d 327; and *In re Appropriation for Hwy. Purposes* (1970), 23 Ohio App. 2d 56.

We conclude, therefore, that consequential damages which would be *damnum absque injuria* in the absence of a taking, may be compensable damages to the residue in the event of a taking of a portion of an owner's property.

The basic measure of damages to the residue is the difference in the fair market value of the residue before and after the taking. In determining the before-value of the residue of the land herein involved, consideration must be given to the right of the city to increase the volume or accelerate the flow of water in the existing ditch without taking any of defendant's property.

The city had a right to improve the ditch in question, including the culverts, on land adjoining that of defendant in such manner as to increase the volume and accelerate the flow of water in the ditch without becoming liable to defendant for consequential damages, such damages being *damnum absque injuria* in such event. The existence of such right in appellee would, in all probability, have some

effect upon the market value of defendant's property. Accordingly, in determining the before-value of defendant's property, the existence of such right in plaintiff must be taken into consideration to the extent that it would be taken into consideration by a prudent purchaser.

The proper procedure in a case such as this is for testimony to be introduced first as to the fair market value of the residue before the improvement, and, second, of the fair market value of such residue after the improvement. If, by the expenditure of money in an amount less than the difference between the before-and-after fair market value of the residue, the property owner could make improvements to such residue to restore the fair market value of the residue to that which it was before the improvement, then, evidence of such "cost of cure" would be admissible and, if proved, would limit the amount of damages to be assessed. The "cost of cure" cannot be utilized to increase damages to the residue, but may be utilized to reduce such damages.

Concluding that consequential damages which would be *damnum abseque injuria* in the absence of a taking may be compensable damages in the event of a taking, if properly proved, defendant's assignments of error I and II are well taken. Defendant's third assignment of error is:

"Although there has been no authoritative pronouncement by the Supreme Court of Ohio regarding the capacity of the stream doctrine, nevertheless there are several decisions among appellate courts in this state which indicate that Ohio does follow the capacity of the stream doctrine."

Defendant, at trial, attempted to present expert testimony stating specifically that the banks of the existing ditch, running through defendant's property, would be overflowed by the waters flowing from the new outlet to be placed upon its property appropriated by plaintiff. The trial court, as a basis for its ruling excluding such testimony, cited the case of *Munn* v. *Horvitz Co.* (1964), 175 Ohio St. 521. The *Munn* case was an injunction action, and the common-law rule may be applied in non-appropriation cases. Judge Troop stated the applicable principle at page

8 of the unreported *appropriation case,* No. 9693, *Columbus* v. *Arthur James,* decided May 12, 1970, as follows:

"An appeal from a judgment in an appropriation matter raises the question of fair trial and just compensation for the land taken and *whether damages to the residue were fairly assessed.*" (Emphasis added.)

Therefore, in this case, the primary issue is not riparian law, or the capacity of the stream doctrine. The key question is whether the court correctly excluded expert testimony concerning damages to the residue of the property as such is construed within an appropriation proceeding. This assignment of error is, in effect, an extension of assignments I and II. Accordingly, within the context of this case, defendant's third assignment of error is not well taken.

The judgment of the trial court is reversed, and the case remanded for a new trial

*Judgment reversed.*

HOLMES, WHITESIDE and REILLY, JJ., concur.