**WRAY, Dir., Appellant,**

v.

**STVARTAK et al., Appellees.**

[Cite as *Wray v. Stvartak* (1997), 121 Ohio App.3d 462.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–018.

Decided June 27, 1997.

464

466

468

*Betty D. Montgomery*, Attorney General, *Dan Malkoff* and *Richard J. Makowski*, Assistant Attorneys General, for appellant.

*Harold M. Hanna*, for appellees.

KNEPPER, Judge.

This is an appeal from a jury verdict rendered in the Lucas County Court of Common Pleas. The jury found that appellees, John F. and Anna Stvartak, were entitled to a total of $97,200 from appellant, Jerry Wray, Director of Transportation, state of Ohio, as compensation for the appropriation of .163 acre of appellees' property. For the reasons that follow, this court reverses the judgment of the trial court.

This case involves the appropriation of a strip of land along the length of appellees' property that resulted from the widening of State Route 2 in Jerusalem Township. Appellees owned approximately twenty acres of property that had three signs on it that were being used for advertising by outside parties. The appropriation physically took two of the three signs. Appellees were informed by the Ohio Department of Transportation ("ODOT") that the signs were classified as nonconforming devices and that all nonconforming rights associated with the signs would cease upon their removal. Appellees were also informed that the permits were not transferrable and that the signs could not be relocated on the residue of appellees' property. In addition to the loss of property, appellees alleged damage to the residue in the form of flooding and improperly installed driveways. After a three-day trial, the jury awarded appellees $85,200 as compensation for the land taken, together with any improvements thereon, and $12,000 as damages to the residue.

On appeal, appellant asserts the following assignments of error:

"Assignment of Error No. I:

"The trial court erred in admitting into evidence the testimony of the landowner and his appraiser on valuation of advertising signs located within the area of the take and outside of the take over objections by appellant and a motion to strike.

"Assignment of Error No. II

"The trial court erred in admitting into evidence opinion testimony of appellees' appraiser as to values of property taken and damages to the residue without having provided values for the entire property before the take and value of the remainder after the take over objections by appellant and a motion to strike.

"Assignment of Error No. III

"The trial court erred in admitting value testimony and in denying appellant's motion to strike the testimony of appellees' appraiser relating to value of the take and damages to the residue which was predicated upon a highest and best use for commercial development contrary to its current agricultural/residential zoning classification.

"Assignment of Error No. IV:

"The trial court erred to the prejudice of appellant in allowing questioning and admitting testimony concerning a claimed flooding or [sic] remaining property, adequacy of driveway construction and monetary damages and a 'cost of cure' to such matters.

"Assignment of Error No. V:

"The trial court erred in permitting incompetent and prejudicial closing argument which charged the jury to consider that the state is stealing property rather than acquiring it for fair market compensation.

"Assignment of Error No. VI:

"The trial court erred in refusing to instruct the jury that it could not award loss of income from the advertising signs in determining compensation.

"Assignment of Error No. VII:

"The trial court erred in to [sic] the prejudice of appellant in finding a date of take and valuation to be January 1, 1993, and in instructing the jury of that date for use in their determination of compensation and damages.

"Assignment of Error No. VIII:

"The trial court erred to the prejudice of appellant in its instructions of law to the jury concerning consideration of zoning changes in determining fair market value and a 'cost of cure' in determining damages to property left after a partial appropriation."

 Appellant's Assignments of Error Nos. I through V relate to the admission of evidence at the trial court level. Decisions concerning the admission of evidence are within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493–494. An abuse of discretion means more than a mere error of law or judgment; it implies an attitude on the part of the trial court that is arbitrary, capricious or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

Appellant argues in his first assignment of error that the trial court erred in admitting testimony regarding the value of the signs as structures, in addition to the potential rental or advertising income that could be generated by the signs. Appellant asserts compensation for the appropriated land cannot include both values. Appellant further asserts that Ohio courts have clearly held that business income is not compensable in an appropriation proceeding. Appellant argues that, pursuant to R.C. 5516.08, in an action to appropriate any interest or right in an advertising device, "loss of business shall not be considered an item of compensable damages."

 Initially, this court would note that the petition for appropriation of real property filed in this action was brought pursuant to R.C. Chapter 163. R.C. 163.31 to 163.33 apply to the removal of advertising devices in conjunction with the appropriation of real property. R.C. 5516.08, on the other hand, applies only

to the removal of advertising devices. Accordingly, this court finds that R.C. 5516.08 does not apply to the appropriation in this case.

A landowner in an appropriation case is entitled to the fair market value of the property taken. *Englewood v. Wagoner* (1987), 41 Ohio App.3d 324, 326, 535 N.E.2d 736, 739–740. The term "fair market value" is usually defined as that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market. *Masheter v. Ohio Holding Co.* (1973), 38 Ohio App.2d 49, 53, 67 O.O.2d 262, 264–265, 313 N.E.2d 413, 415–416.

In an appropriation case, the landowners are entitled to receive not only the value of the appropriated land, but also compensation for any damage to their remaining property (the residue) as a result of the take. *Englewood* at 326, 535 N.E.2d at 739–740. See, also, *Norwood v. Forest Converting Co.* (1984), 16 Ohio App.3d 411, 415, 16 OBR 481, 485–486, 476 N.E.2d 695, 700–701. The difference between the concepts of compensation and damages has been explained as follows:

" 'Compensation' means the sum of money which will compensate the owner of the land actually taken or appropriated; that is, it is the fair market value of the land taken, irrespective of any benefits that may result to the remaining lands by reason of the construction of the proposed improvement. 'Damages,' in the strict sense in which the term is used in an appropriation proceeding, means an allowance made for any injury that may result to the remaining lands by reason of the construction of the proposed improvement, after making all permissible allowances for special benefits, and the like, resulting thereto." *Norwood, supra,* at 415, 16 OBR at 485, 476 N.E.2d at 700, citing 38 Ohio Jurisprudence 3d (1982), Eminent Domain, Section 103.

In determining the fair market value of the property before and after the appropriation, " 'every element that can fairly enter into the question of value, and which an ordinarily prudent business man would consider before forming judgment in making a purchase, should be considered.' " *Sowers v. Schaeffer* (1951), 155 Ohio St. 454, 459, 44 O.O. 419, 422, 99 N.E.2d 313, 317, quoting 29 Corpus Juris Secundum, 971, Section 136.

In *Sowers*, the property involved was developed for recreation, summer home, and permanent home purposes. The Ohio Supreme Court held, in that instance, in ascertaining the property's value as a whole, it was proper to admit testimony as to the value of the individual structures, buildings, and improvements, the rental value thereof, and the nature of the businesses that could suitably be carried thereon that may either enhance or lessen the property's value. *Id.* at paragraph two of the syllabus. However, the court in *Sowers* noted:

"As a rule, profits from commercial businesses on premises can not be shown in an appropriation proceeding for the reason that such profits are too speculative, depending as they do upon the acumen and skill of the one who carries on the business, but, assuredly, it is proper to show the kinds of businesses to which the premises are adaptable." *Id* at 459, 44 O.O. at 421, 99 N.E.2d at 317.

A rationale is that " '[w]hat one man might do at a profit, another might only do at a loss.' " *Wray v. Hart* (Aug. 13, 1992), Lawrence App. No. 91CA20, unreported, 1992 WL 208900, quoting Nichols on Eminent Domain (1991) 19–38 to 19–39, Section 19.06[1]. In *Sowers*, although the court found that there was testimony regarding the rentals received from the dwellings and the nature of the businesses to which the property was adapted, there was no testimony admitted as to income from commercial business conducted on the property.

Furthermore, the Ohio Supreme Court has held that a landowner in an appropriation case is not entitled to realize a profit on his property. *In re Appropriation of Easements for Hwy. Purposes* (1963), 174 Ohio St. 441, 448, 23 O.O.2d 100, 103–104, 190 N.E.2d 446, 451. As such, loss of future profits or the income potential of land are inappropriate means by which to measure a property's fair market value:

"Measure of market value of land taken in an appropriation proceeding is the market value of the land, not the output thereof, and the accepted formula for determining such value is not how much the property would produce over a 30–year period but what a purchaser who was willing, but not required, to buy would pay and what a seller who was willing, but not required, to sell would accept." *Id.* at paragraph four of the syllabus.

"Loss of future profits to be derived by a landowner whose property is taken in an appropriation proceeding is too speculative and uncertain for an accurate and satisfactory measurement of the present value of the land taken. (*Cleveland Boat Service, Inc., v. City of Cleveland,* 165 Ohio St., 429 [60 O.O. 85, 136 N.E.2d 274], approved and followed.)" *Id.* at paragraph five of the syllabus.

According to Evid.R. 702(C), an expert's testimony must generally be supported by a proper foundation in reliable scientific, technical, or other specialized information in order to be admissible at trial. This court notes that there are three recognized methods of appraisal that can be used in determining fair market value: (1) cost of reproducing property less depreciation, (2) market data approach, or sales comparison approach, utilizing recent sales of comparable property, and (3) income or economic approach based upon capitalization of net income. *Pokorny v. Local 310* (1973), 35 Ohio App.2d 178, 180, 64 O.O.2d 277, 278–279, 300 N.E.2d 464, 466, reversed on other grounds (1974), 38 Ohio St.2d 177, 67 O.O.2d 195, 311 N.E.2d 866.

In this case, John F. Stvartak ("appellee") and his appraiser, Lawrence Degnan, testified on behalf of appellees. Appellee testified that he had three signs on the property, one of which was a large two-faced illuminated billboard. He also testified that he received rent on two of the signs in yearly rental amounts of $323 and $556. Appellee stated that he had nine years remaining on ten-year leases for these signs. As to the billboard, appellee testified that the billboard faces were rented yearly for $3,800 and $4,104. However, on cross-examination, he testified that the last annual income he personally received for the billboard was only $357. Although he stated there was some dispute over the ownership of the billboard, appellee testified that he currently was the only party entitled to income generated by the billboard. Appellee stated that he incurred $200 in operating expenses yearly, which consisted of expenses for mowing the lawn, painting, and general upkeep of the sign area. He testified that the rest of the expenses, such as the actual advertising placed on the signs, were borne by the person leasing the sign and did not come out of the signs' gross income. Without stating the basis for his opinion, appellee testified that the fair market value of the property before the taking was $250,000 and after the taking was $135,000, the difference being $115,000. Appellee attributed the difference in value to loss of signs, loss of profits, loss of permits, and damage to residue.

Degnan testified that he appraised the land using a sales comparison approach. He found that the land's highest and best use was as commercial property. Based on a sales analysis approach, Degnan determined that the value of the undeveloped land was $20,000 per acre, i.e., $3,200 for the .163 acre of property acquired by appellant. As there was no comparable property with billboards or signs recently sold in the area for which he could use to do a sales analysis, Degnan testified that using a cost-less-depreciation analysis, the sign structures were valued at $12,600. Degnan went on to testify that he capitalized the income of the signs by using the figure of $8,656, which represented the net income the signs produced yearly ($8,906, the gross amount of income he was told by appellee that the signs produced, less $250 for expenses). Degnan testified that the capitalized income of the signs was $62,280, "which means that an investor would be willing to pay that figure to buy this income." He went on further to testify that this figure represented "income loss." Degnan testified that the value of the property before the taking, "with the income from the signs, with the signs physically being on the property, with no flooding problems * * * the value at that time with all of those factors involved was $225,000." He then testified that the value of the property following the completion of the project was $131,000, after the "loss of income," "physical loss of the signs," and cost to cure the problems created. Determining that, the total amount of compensation appellee was entitled to recover from appellant was $93,904.

This court initially notes that the rationale that lost income is too speculative a measure upon which to base fair market value is astoundingly evident herein. Although appellee testified that he was currently entitled to receive all income from the billboard, he never received the $7,904 allegedly made from the advertising rental of the billboards. Who is to say that he would personally make this amount in the future selling the advertising space himself? The speculative nature of lost income is further complicated by the fact that, although appellee testified that the rental on the signs totaled $8,783, Degnan used $8,906 as the gross income of the signs. No explanation was offered for this difference. These facts illustrate how inappropriate loss of income is as a measure of fair market value in this case.

Based on the foregoing, this court finds that the trial court abused its discretion by allowing, over appellant's objections, the testimony of appellee and Degnan regarding loss of income. Degnan explicitly stated that he based the fair market value of the property before the taking on the capitalized income potential of the signs, which he referred to as "loss of income." Appellee, additionally, based the amount of compensation he believed he was entitled to receive on the income he would lose from the removal of the signs. Although capitalizing the reasonable rental value of property is appropriate in determining the value of a leasehold interest, see *Pokorny v. Local No. 310* (1974), 38 Ohio St.2d 177, 67 O.O.2d 195, 311 N.E.2d 866, the methods of valuation and appraisal used by appellee and Degnan in this case are clearly prohibited by law. See *In re Appropriation,* 174 Ohio St. 441, 23 O.O.2d 100, 190 N.E.2d 446. See, also, *Sowers, supra.*

This is not to say that the presence of signs and billboards on a property cannot be a factor to consider in computing the property's fair market value. Clearly, a landowner is entitled to compensation for any increase in the property's fair market value resulting from the existence of the signs on the property. Evidence of the kinds of business to which the property is adaptable, *i.e.,* rental of sign fronts for advertising purposes, is relevant to and probative of the appraisal of the property's fair market value. See *Sowers, supra,* at paragraph two of the syllabus. The value of the property in this case, however, simply cannot be computed on the landowner's lost income, or the capitalized amount of future earnings. See *In re Appropriation,* 174 Ohio St. 441, 23 O.O.2d 100, 190 N.E.2d 446. See, also, *Sowers, supra.*

With respect to lost income, appellant additionally asserts that compensation cannot be awarded for loss of income from a sign which is not physically taken. This court agrees that loss of income cannot be used as a means to measure the fair market value of appellees' property. However, appellee testi-

fied that his permits on all the signs were revoked and he was unable to acquire a permit for the remaining sign. This court finds that even though the sign remains, it does not necessarily follow that appellees suffered no decrease in the fair market value of their residue as a result of the loss of use of their remaining sign. This is a factual question for the trier of fact to determine.

Appellant also specifically objects to appellees' being compensated for both the value of the sign structure and loss of income. Although loss of income in this case is an invalid measure of the fair market value, this court does not find that a cost, less depreciation, analysis is the sole method which can be used to determine the fair market value of property with signs on it. Due to the presence of the signs, a parcel of property may have an increased value that exceeds the actual cost of the sign structures. Furthermore, there may be instances where there are comparable sales that can be used to determine the fair market value. Such evidence, however, must comport with accepted appraisal methods. Ultimately, the trier of fact must determine the fair market value of the property and the compensation and damages owed. See R.C. 163.09(A).

Based on the foregoing, this court finds appellant's first assignment of error well taken.

In Assignment of Error No. II, appellant argues that the trial court erred in not striking Degnan's testimony on the basis that he testified to the value of the property taken and the damages to the residue without first providing values for the entire property before and after the taking.

With regard to expert opinion concerning the property affected in an appropriation proceeding, it is well settled that a qualified witness must give his opinion as to the value of the entire property before the taking and as to the value of the remainder of the property after the taking. *Atlantic & Great W. RR. Co. v. Campbell* (1855), 4 Ohio St. 583, 585; *Columbus, Hocking Valley & Toledo Ry. Co. v. Gardner* (1887), 45 Ohio St. 309, 322–323, 13 N.E. 69, 73–74. Pursuant to R.C. 163.14, the jury must determine separately the value of the land taken and damages to the residue. Therefore, *after* an expert witness states his or her opinion as to the value of the land and the residue, he or she may assist the jury by making the mathematical calculations as to the value of the land taken as part of the entire tract and as to the damage to the residue. *Masheter v. Kebe* (1973), 34 Ohio App.2d 32, 38, 63 O.O.2d 58, 62, 295 N.E.2d 429, 433, appealed on other grounds, 49 Ohio St.2d 148, 3 O.O.3d 86, 359 N.E.2d 74. See, also, *Am. Louisiana Pipe Line Co. v. Kennerk* (1957), 103 Ohio App. 133, 139, 3 O.O.2d 201, 204–205, 144 N.E.2d 660, 666.

The Eleventh District Court of Appeals in *Wray v. Mussig* (Sept. 20, 1996), Lake App. No. 95–L–172, unreported, 1996 WL 586755, held that *Kebe* and the

"venerable opinions" of the Ohio Supreme Court cited above were "no longer viable" because of Evid.R. 704. *Mussig* held that Evid.R. 704 permits "an expert testifying in a land appropriation proceeding to give an opinion as to the exact value of the damages." This court agrees that an expert can give an opinion as to the exact value of damages. However, Evid.R. 704 does not relieve an expert from the requirement that he or she state the before and after fair market values of the property.

Degnan gave testimony regarding the damages sustained, such as the loss of the signs and the income therefrom, the value of the land itself, and damages due to flooding. He then testified that the fair market value of the property as a whole, "the entire twenty-acre parcel," before the taking was $225,000, and the fair market value of the property after the taking was $131,000.

This court has already found that Degnan improperly appraised the fair market value of the property. It therefore follows that his testimony was inadmissible. Nevertheless, this court finds that, although Degnan did not give before and after values of the property prior to discussing damages, his testimony should not have been stricken on that basis.

Although the manner in which Degnan testified did not comport with the established before-and-after rule, see *Kebe*, 34 Ohio App.2d 32, 63 O.O.2d 58, 295 N.E.2d 429, such error was not, in and of itself, prejudicial. The jury was ultimately provided the fair market value for the whole parcel before the taking and after. Accordingly, the jury could have properly determined the extent of appellees' injury and the compensation and damages owed. See *Campbell, supra.* See, also, *Gardner,* supra.

Although this court finds that Degnan's testimony should have been stricken on other grounds, the trial court did not abuse its discretion in not striking Degnan's testimony on this basis. Appellant's second assignment of error is therefore found not well taken.

Appellant argues in the third assignment of error that the trial court erred in admitting, over appellant's objection, Degnan's testimony that the highest and best use of appellees' property was for commercial development, rather than as it was zoned for residential/agricultural uses.

With regard to property valuation, the Ohio Supreme Court in *Sowers, supra,* at paragraph three of the syllabus, stated:

"The rule of valuation in a land appropriation proceeding is not what the property is worth for any particular use but what it is worth generally for any and all uses for which it might be suitable, including the most valuable uses to which it can reasonably and practically be adapted."

Testimony from an expert appraisal witness that the highest and best use of property is for a use other than its zoned use is properly admissible. *Masheter v. Kebe* (1976), 49 Ohio St.2d 148, 3 O.O.3d 86, 359 N.E.2d 74. In *Kebe,* the court held that zoning did not control a property's appraised value:

"Although existing zoning restrictions necessarily constitute an important factor for the appraisal witnesses to consider in connection with the market value of the land, *it must be recognized that, as a practical matter, the existing zoning regulation does not and may not control that market value of the property involved.* If, in the opinion of an expert appraisal witness, an informed, willing purchaser would be presently agreeable to pay more than an amount justified under existing zoning, such evidence is admissible because it reflects upon the fair market value of the property." (Emphasis added.) *Id.* at 153, 3 O.O.3d at 88, 359 N.E.2d at 77.

Accordingly, "an expert need not confine his valuation testimony to the use permitted under existing zoning regulations. [Citations omitted.]" *Mussig, supra.* Furthermore, "the expert may testify as to a highest and best use that is not permitted under existing zoning regulations even without evidence of a probable change in zoning within the foreseeable future." *Id.*

Although the property was zoned agricultural/ residential, Degnan appraised the property taken as commercial property because that is what he considered to be the highest and best use for that property after taking into consideration everything, including a "reasonable expectation of a favorable review should a zoning change be requested." In making this determination, Degnan considered the location of the subject property and the commercial development in the surrounding area. Degnan further testified that a willing purchaser would pay a commercial value for this land.

Additional testimony regarding the property's commercial value came from appellee. Appellee testified that he was surrounded by commercial property and that there had been recent commercial development in the area. He also stated that he had been assured that he would not have a problem with getting his zoning changed to commercial if requested.

David Dicke, appraiser for appellant, on the other hand, testified that he found the highest and best use of the property to be residential and appraised it at $3,200 an acre.

Based on the foregoing, although there was conflicting testimony, this court finds that the trial court did not abuse its discretion in admitting testimony that the highest and best use was for commercial development. See *id.* Accordingly, appellant's third assignment of error is found not well taken.

In the fourth assignment of error, appellant argues that the trial court erred to the prejudice of appellant in allowing testimony regarding damage to the residue and the cost to cure this damage. In particular, appellant asserts that the flooding on appellees' property was infrequent and, therefore, did not constitute a taking.

As stated previously, appellees are entitled to recover damages to the residue as a result of the take. See *Englewood, supra,* 41 Ohio App.3d at 326, 535 N.E.2d at 739–740. " 'Damages' in the strict sense in which the term is used in an appropriation proceeding, means an allowance made for any injury that may result to the remaining lands [*i.e.,* the residue] by reason of the construction of the proposed improvement, after making all permissible allowances for special benefits, and the like, resulting thereto." *Norwood,* 16 Ohio App.3d at 415, 16 OBR at 485, 476 N.E.2d at 700, citing 38 Ohio Jurisprudence 3d (1982), Eminent Domain, Section 103. Flooding of landowners' property during and immediately after every rain can constitute a *pro tanto* taking of property where it deprives the owners of the use of their property. *Lucas v. Carney* (1958), 167 Ohio St. 416, 5 O.O.2d 63, 149 N.E.2d 238.

Where damage is caused to the residue of property remaining after a taking, "[if], by the expenditure of money in an amount less than the difference between the before-and-after fair market value of the residue, the property owner could make improvements to such residue to restore the fair market value of the residue to that which it was before the improvement, then, evidence of such 'cost of cure' would be admissible and, if proved, would limit the amount of damages to be assessed." *Columbus v. Farm Bur. Co-op. Assoc., Inc.* (1971), 27 Ohio App.2d 197, 203, 56 O.O.2d 382, 385, 273 N.E.2d 888, 892. The court in *Farm Bureau* went on to state that "the 'cost of cure' cannot be utilized to increase damages to the residue, but may be utilized to reduce such damages." *Id.*

In this case, appellee testified extensively concerning the constant flooding of his property after rain. He also testified that the property never flooded before the expansion of Route 2. With regard to the driveways, appellee stated that one driveway was installed for access purposes for farm equipment. He testified that the drop-off between the driveway and his property was so steep that the driveway was unsuitable for farm equipment. He additionally testified that the driveway was not wide enough to accommodate farm machinery and that the pavement was not thick enough to sustain farm machinery traffic. Appellee testified that the necessary repairs to the property would cost $17,000.

Degnan testified that the frontage along the road could not be developed because of the flooding. He estimated that based on his prior appraisal of

$20,000 an acre, the land lost due to flooding was worth $80,000 to $100,000. With regard to the driveways, Degnan testified that "without access to a property, a property doesn't have much value." Degnan testified that the "cost of cure" of the residue was $9,400.

There is competent credible evidence upon which a jury could rely to establish that the flooding on appellees' property is continual and resulted from appellant's appropriation. Therefore, the jury could find that appellees suffered a taking of the residue of their property. See *Carney, supra.* With regard to the driveways, there is some evidence to suggest that the fair market value of the property is reduced due to lack of accessibility.

According to Degnan, the fair market value of the land lost due to flooding was worth $80,000 to $100,000, with the existing damage. Whereas, the cost to repair such damage was only $9,400 or $17,000. Since the "cost of cure," by either estimate, was substantially less than the value of the property lost, the trial court did not abuse its discretion in allowing testimony regarding the damage to appellees' property and the cost to cure this damage. See *Farm Bureau, supra.*

Accordingly, appellant's fourth assignment of error is found not well taken.

In the fifth assignment of error, appellant asserts that the trial court erred in permitting incompetent and prejudicial closing argument from appellees' counsel. Specifically, appellant objects to the trial court allowing appellees' counsel to argue that "appellant is not maintaining fairness with the property owner in its construction of a highway improvement, in its valuation of the property and in its presentation of evidence, to question the purpose behind taking land containing advertising signs and to cap off his attack of the government's taking of property by alleging it is nothing short of an act of theft."

Initially we note that closing arguments are not evidence and the jury was so instructed. "In closing arguments, counsel is permitted to freely discuss the facts; to arraign the conduct of parties; to impugn, excuse, justify, or condemn motives so far as they are developed by the evidence." *Miko v. Lincoln Natl. Corp.* (Mar. 6, 1997), Cuyahoga App. No. 70826, unreported, 1997 WL 97243, citing 90 Ohio Jurisprudence 3d (1980) 406, Permissible Limits of Argument. As such, it is well settled that great latitude is afforded counsel in the presentation of closing argument to the jury. *State v. Champion* (1924), 109 Ohio St. 281, 289, 142 N.E. 141, 143–144. See, also, *State v. Woodards* (1966), 6 Ohio St.2d 14, 26, 35 O.O.2d 8, 14–15, 215 N.E.2d 568, 577–578. The assessment of whether these bounds have been exceeded is a discretionary function to be performed by the trial court. *Ohio & W. Pennsylvania Dock Co. v. Trapnell* (1913), 88 Ohio St. 516, 521, 103 N.E. 761, 763. Such determination will not be

reversed on appeal absent an abuse of discretion. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313.

In this case, the court finds that most of the closing arguments objected to by appellant were either not objected to or were not beyond the proper limits of closing arguments. However, with regard to the following statements, this court finds that it was an abuse of discretion to permit such argument:

"The crux of the case, of course, is in the income generation from these signs. The rental income. \* \* \*

"And the State's position in this has been very interesting to me. And I tried all week to think of an analogy I could come up with. And I can't think of one. Their position in this matter is we're going to come in. We're going to pay you for the physical structure and that's it. You don't get anything for the lost income from those signs.

" \* \* \* They're not proposing to pay a dime for the lost income from those signs.

"Consider for yourselves, first of all, does it make any sense? And secondly, does it seem fair? Do any of us expect that if we had income producing property and the State comes in and takes it that they're not going to pay for the fact that it was income producing property?

" \* \* \*

"That's a taking. Absolutely. That's the kind of things our mothers teach us about when we're 5 years old. If you take something and you don't pay for it, we know what that's called. And if we do it at a store, we know what happens to us."

■ Appellant objected to this vein of argument on the basis that it implies that the taking is somehow a theft by the state. This objection was overruled. This court finds that it was an abuse of discretion to allow such inflammatory argument. However, in view of our ruling on Assignment of Error No. I, we find such error to be moot. Appellant's fifth assignment of error is therefore found not well taken.

In the sixth assignment of error, appellant asserts that the trial court erred in refusing to instruct the jury that it could not award loss of income from the advertising signs in determining compensation. Appellant's request stated:

■ "You have heard testimony that the property owners received rental income from the signs which were located on their land. The owners may only be compensated for the real property taken by the State, which includes the land, land improvements and permanent fixtures on the land. You may not include as compensation or damages an award for loss of rental income."

This court finds that the trial court properly omitted this instruction. Appellant's proposed instruction is misleading as to the law and would have confused the jury. Accordingly, appellant's sixth assignment of error is found not well taken.

In the seventh assignment of error, appellant argues that the trial court erred in finding the date of the taking to be January 1, 1993, and erred in instructing the jury that January 1, 1993 should be used in their determination of compensation and damages.

 Ordinarily, property taken for public use must be valued as of the date of trial, unless prior possession is taken. *Dir. of Highways v. Olrich* (1966), 5 Ohio St.2d 70, 34 O.O.2d 153, 213 N.E.2d 823. However, an exception to this general rule is that, where the activity of an appropriating authority has caused depreciation in the value of property prior to the time that it is actually taken, the property will be valued immediately prior to its depreciation. *Bekos v. Masheter* (1968), 15 Ohio St.2d 15, 44 O.O.2d 9, 238 N.E.2d 548. See, also, *Cleveland v. Carcione* (1963), 118 Ohio App. 525, 26 O.O.2d 53, 190 N.E.2d 52. Property value can depreciate due to the public having knowledge of the project. *In Re Appropriation of Property of Bunner* (1971), 28 Ohio Misc. 165, 57 O.O.2d 312, 276 N.E.2d 677.

 In this case, appellee testified that he was informed by ODOT in December 1992 that the property would be taken and the signs could not be relocated on the residue. The trial court found that the land's value depreciated as soon as it was known that the land and signs would be appropriated. This court finds that the finding of the trial court that the date of the take was January 1, 1993 is supported by the evidence. See *Bunner, supra.* Accordingly, the trial court did not commit error in instructing the jury that the date of the taking was January 1, 1993. Appellant's seventh assignment of error is therefore found not well taken.

In the eighth assignment of error, appellant argues that the trial court erred in instructing the jury that they may consider the potential of a zoning change in determining the fair market value of the property and in instructing the jury regarding "cost of cure." As the court has already concluded that it was proper for the court to allow testimony which valued the property for commercial use and testimony regarding the "cost of cure," this court finds that the trial court did not commit error in instructing the jury as to these matters. Accordingly, appellant's eighth assignment of error not well taken.

On consideration whereof, the court finds that substantial justice has not been done the party complaining. The abuse of discretion in allowing testimony as to fair market value based on loss of income was prejudicial error. Accordingly, the

judgment of the Lucas County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings. Cost of this action to be paid by appellees.

*Judgment reversed.*

MELVIN L. RESNICK, P.J., and GLASSER, J., concur.