DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an entry of judgment on a jury verdict rendered in the Wood County Court of Common Pleas wherein appellant, CNL Income Fund IX, Ltd., a Florida Limited Partnership ("CNL") was awarded the sum of $11,600 as compensation for an eminent domain appropriation made by appellee, Gordon Proctor, Director, Ohio Department of Transportation ("ODOT"). For the reasons that follow, we affirm.
 {¶ 2} On August 25, 2002, ODOT filed the instant action against CNL and other defendants to appropriate land for the rebuilding of an exit and entrance ramp at the SR-18 interchange of Interstate I-75 in southern Wood County, Ohio. CNL's property, developed in 1974 as an LK restaurant and converted to a Denny's in 1989, is in the southwestern quadrant of the interchange between a gas station and a motel. CNL bought the property in 1991 and leased it to a Denny's franchisee for a term of 20 years. Although the restaurant had been out of business for about two years when the case was filed, the tenant continued to pay rent.
 {¶ 3} Prior to the take, the property had direct access from SR-18 to the restaurant by way of an easement across the gas station's property. After the take, the direct access was closed off, but replacement access was provided in the form of a service road located behind the properties. In addition to closing the easement, ODOT took 0.046 acres of CNL's land to build a driveway that connected it to the service road. CNL's tenant used these changes as a reason for terminating its 20-year lease with CNL.
 {¶ 4} The relocation of the property's driveway and the termination of the lease were the focal points of the two-day trial.
 {¶ 5} CNL's experts testified that the service road access was so inconvenient that the property was no longer suitable for restaurant use. One of them, commercial realtor Kenneth Hicks, testified that it reduced the property's value by $600,000.
 {¶ 6} By contrast, ODOT's expert appraiser, Jeffery Upton, testified that the property's usefulness as a restaurant could be fully restored with only minor modifications, such as installation of a new sign and removal of a guardrail that was inhibiting the new flow of traffic. Upton further testified that $11,665 would sufficiently compensate CNL for both the taking and the "cost to cure" work.
 {¶ 7} The jury apparently agreed with ODOT's appraiser, and returned a verdict of $11,600. The court entered judgment, and this appeal ensued.
 {¶ 8} Appellant's overall complaint on appeal is that the trial court's decisions regarding evidentiary matters, both prior to and during trial, effectively thwarted the jury's ability to award just compensation, thereby denying appellant its rights under the Takings Clause of the Fifth Amendment to the United States Consitution and under Sections 1 and 19, Art. I of the Ohio Constitution. In support of this general contention, appellant asserts the following specific assignments of error:
 {¶ 9} "Assignment of Error No. 1: The Trial Court Erred in Excluding the Expert Testimony of Allen Nagler.
 {¶ 10} "Assignment of Error No. 2: The Trial Court Erred in Excluding Evidence Regarding the Lease between CNL and Denny's Inc., and Rents Received under that Lease.
 {¶ 11} "Assignment of Error No. 3: The Trial Court Erred in Determining the Date of Take.
 {¶ 12} "Assignment of Error No. 4: The Trial Court Erred in Allowing ODOT's Expert Witness to Read Excerpts from a Textbook.
 {¶ 13} "Assignment of Error No. 5: The Trial Court Erred in Precluding CNL's Senior Vice President, Glen Kindred, from Testifying as to Value."
 {¶ 14} Four of CNL's five assignments of error relate to evidentiary rulings. A trial court has broad discretion in determining whether to admit or exclude evidence; and absent an abuse of discretion, an appellate court may not disturb such rulings. State v. Myers (2002),97 Ohio St.3d 335, at 348; citing State v. Maurer (1984),15 Ohio St.3d 239, 265. An abuse of discretion suggests more than a mere error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Id., citing State v. Adams
(1980), 62 Ohio St.2d 151, 157. Thus, in considering the propriety of the four disputed evidentiary determinations, this court must confine its inquiry to a determination of whether the trial court, in making its decisions, acted unreasonably, arbitrarily, or unconscionably.
 {¶ 15} The other assignment of error, dealing with the "date of take," challenges a factual finding by the trial court. That finding is likewise subject to a deferential review, and must be affirmed if there is any competent and credible evidence to support it. See Wray v. Stvartak
(1997), 121 Ohio App.3d 462, 481 (upholding date of take finding that was "supported by the evidence"); see also Myers v. Garson (1993),66 Ohio St.3d 610, 615-616 (holding that trial court must be upheld "where there exists some competent and credible evidence supporting the findings of fact").
 {¶ 16} In addition, CNL must show that each of the claimed errors was materially prejudicial. State v. Noling (2002), 98 Ohio St.3d 44, 52. To make such a showing, CNL must demonstrate that had the trial court ruled in its favor, the jury would have reached a different verdict. See Vargov. Travelers Ins. Co. (1987), 34 Ohio St.3d 27, 32-33; Petti v. Perna
(1993), 86 Ohio App.3d 508, 514.
 {¶ 17} Appellant argues in his first assignment of error that the trial court erred in excluding the testimony of its expert, Allen Nagler, regarding the value of its property. Had Nagler been allowed to testify, he would have told the jury that, given the terms of the lease to Denny's, a buyer would have paid between $560,000 and $770,000 for the leased fee before the suit was filed. After the taking, however, it was Nagler's opinion that the property was worthless.
 {¶ 18} A witness may testify as an expert if all of the following apply:
 {¶ 19} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 20} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 21} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information." Evid. R. 702."
 {¶ 22} In its order precluding any testimony by Nagler, the trial court stated that, even after a thorough review of Nagler's deposition, it remained unconvinced that Nagler had any specialized knowledge, skill, experience, training, or education regarding the subject matter of his testimony, as is required by Evid.R. 702(B). It further determined that Nagler's testimony did not in any way appear to be based upon reliable, scientific, technical, or other specialized information as required by Evid.R. 702(C). (In making this assessment, the trial court acknowledged that Nagler may well have known more about property values than many lay persons, and, in that regard, his testimony probably satisfied the requirements of Evid.R. 702(A).)
 {¶ 23} This court's review of Nagler's deposition finds the trial court's characterization of the testimony to be entirely accurate: despite numerous attempts by plaintiff's counsel to extract a basis for Nagler's qualifications as an expert, Nagler never acknowledged having any specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; in addition, despite repeated requests for disclosure of the basis for his conclusions, Nagler never gave any indication that his testimony regarding the valuation of the CNL property was based on reliable scientific, technical, or other specialized information. Instead, throughout the deposition, Nagler appeared to rely on boastful hyperbole, doubtful sources, and vague generalizations as evidence of his qualifications and in support of his conclusions. For example, when asked to provide a general overview of what he did in terms of the CNL assignment, he answered that he approached it "[i]n a very lackadaisical manner. And where I utilize the extreme knowledge and experience that I possess being involved in thousands of leases over the years and sales as well." When asked specifically about the work he did on this matter, he answered, "Very, very, very little," including "a few conversations" "with various parties", "in casual conversation."
 {¶ 24} In the opinion of this court, there was nothing arbitrary, unreasonable, or unconscionable about the trial court's decision to exclude Nagler's testimony. Appellant's first assignment of error is therefore found not well taken.
 {¶ 25} Appellant argues in its second assignment of error that the trial court abused its discretion in excluding evidence regarding the lease between CNL and Denny's, and the rents received under that lease, because such evidence is a clear indicator as to the value of property.
 {¶ 26} Ohio law provides that "[a] landowner in an appropriation case is entitled to the fair market value of the property taken. * * * The term `fair market value' is usually defined as that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market." Wray v. Stvartak (1997), 121 Ohio App.3d 462,471, citing Englewood . Wagoner (1987), 41 Ohio App.3d 324, 326 andMasheter v. Ohio Holding Co. (1973), 38 Ohio App.2d 49, 53. In an appropriation case, the landowner is entitled to receive not just the value of the appropriated land, but also compensation for damage to the remaining property (the residue) as a result of the take. Englewood,
supra, at 326.
 {¶ 27} In calculating a property's fair market value before and after appropriation, "every element that can fairly enter into the question of value, and which an ordinarily prudent business man would consider before forming judgment in making a purchase, should be considered." Sowers v.Schaeffer (1951), 155 Ohio St. 454, 459. However, when valuing property for eminent domain purposes, Ohio courts do not consider individual leases and other partial interests. See, e.g., Alliance Towers, Ltd. v.Stark Cty. Bd. of Revision (1988), 37 Ohio St.3d 16, 23 ("These tax and eminent domain cases demonstrate the decision by this court to view the fair market value of real property as uncomplicated by encumbrances. * * * It is to be valued free of the ownerships of lesser estates such as leasehold interests, deed restrictions, and restrictive contracts with the government."). Other evidence considered inappropriate in making this type of determination is any evidence of loss of a landowner's future profits, because future profits are "too speculative and uncertain for an accurate and satisfactory measurement of the present value of the land being taken." In re Appropriation of Easements for Highway Purposes
(1963), 174 Ohio St. 441, paragraph five of the syllabus.
 {¶ 28} Although evidence of the value of a particular leasehold interest being appropriated is incompetent, evidence of market rental value is admissible as a factor in determining the fair market value of the whole property. The Queen City Realty Co. v. Linzell (1957),166 Ohio St. 249, syllabus at paragraphs one and two (distinguishing "reasonable rental value," which is admissible, from "the agreed rental called for by the lease," which is not). As stated by the Supreme Court of Ohio in Queen City, supra, the only reasonable purpose for offering evidence of a leasehold's separate value is "to circumvent the rule of law" under which the sum of the parts cannot exceed the value of the whole. Id. at 253; see also Alliance Towers, Ltd. v. Stark Cty. Bd. OfRevision (1988), 37 Ohio St.3d 16, 23 ("We have also held that only evidence of the reasonable rental value of property is competent and that evidence of the outstanding leasehold interest is incompetent, even if this interest may be very valuable.").
 {¶ 29} The same logic that precludes a party from introducing evidence of a leasehold's separate value clearly applies to preclude a party from introducing evidence of the separate value of the leased fee. Accordingly, it is the opinion of this court that the trial court's decision to exclude evidence of the 1991 lease between CNL and Denny's — and of the rental rates received thereunder — for purposes of valuing the subject property was both lawful and proper, and in no way constituted an abuse of discretion.
 {¶ 30} Arguing against this conclusion, appellant states that the rental value set out in the 1991 lease was the best evidence to establish the market rental value, which, as indicated above, is admissible for valuation purposes in an eminent domain proceeding.
 {¶ 31} It is noted that, despite the trial court's contradictory ruling, CNL was, in fact, permitted to introduce evidence of both the 20-year lease and the $77,000 a year rental rate under that lease. In addition, CNL was permitted to introduce testimony by its valuation expert, Kenneth Hicks, that the $77,000 annual rent paid under the lease, considered with the prices investors paid to buy comparable leased restaurants, indicated that CNL's leased property was worth $750,000 to $850,000 before the taking.
 {¶ 32} CNL's assertion to the contrary notwithstanding, there was abundant evidence introduced at trial to suggest that the $77,000 a year rental income was significantly above the market rate and, therefore, was not competent evidence of value in this case. Kenneth Hicks, CNL's own valuation expert, admitted that before learning of the subject lease he had valued the restaurant property at $250,000 to $300,000, and had calculated the market lease rate to be between $10 and $12 per square foot. This conclusion corresponded closely to the opinion of ODOT's expert, appraiser Jeffrey Upton, who testified that in his estimation the property before the taking was worth $265,000, and the market rental rate was $12 per square foot. (After the taking, Upton concluded that the property was worth $253,335, which was close to the $250,000 amount for which CNL was offering to sell the property on the day of trial.)
 {¶ 33} In addition, although the rents were expressly set out in the subject lease, other evidence introduced at trial tended to demonstrate the unreliability of those figures as indicators of value. Specifically, the evidence showed that: (1) two of CNL's tenants went bankrupt; (2) CNL established an accounting reserve for doubtful rents on the property; (3) the rent was renegotiated to a lower level after a nearby competitor opened for business; (4) part of the rent was based on a percentage of the tenant's restaurant sales; and (5) the restaurant went out of business in 2000.
 {¶ 34} Based on the foregoing, it is the opinion of this court that it was within the trial court's discretion to bar all evidence of the 1991 lease and to restrict testimony about rental values to market rents only. To the extent that the trial court elected to limit excludable evidence, rather than preclude it altogether, was not, in our opinion, an abuse of that discretion. Appellant's second assignment of error is therefore found not well taken.
 {¶ 35} Appellant's third assignment of error states that the trial court erred in determining the "date of take."
 {¶ 36} "The purpose of determining the date of taking for valuation is to ensure that the property owner is paid the fair value his property had before it was devalued by the activities of the appropriating authority prior to taking possession." City of Norwood v. Cannava (1989),45 Ohio St.3d 238, 239. In general, the date of taking is the earlier of either the date of trial or the date of actual physical appropriation.Evans v. Hope (1984), 12 Ohio St.3d 119, 120. An exception to this general rule exists where the activity of an appropriating authority has caused depreciation in the value of property prior to the time that it is actually taken; in such case, the property will be valued immediately prior to its depreciation. Bekos v. Masheter (1968), 15 Ohio St.2d 15. A court's date of taking determination must be upheld if it is supported by the evidence. See Wray v. Stvartak (1997), 121 Ohio App.3d 462, 481.
 {¶ 37} In this case, ODOT presented evidence in support of two alternative dates for designation as the date of taking: August 3, 2003, when ODOT closed the restaurant's easement across the gas station's property, or October 14, 2003, when it first took possession of CNL's property. CNL argued in favor of an earlier date: August 26, 2002, when this lawsuit was filed. According to CNL, as of August 26, 2002, it no longer had a tenant and was not able to sell or rent the property due to the impending condemnation. After hearing from counsel for both sides, the trial court found August 3, 2003, the date that ODOT closed the restaurant's easement, to be the proper date of taking.
 {¶ 38} It is undisputed that Denny's used ODOT's taking as its reason for lawfully terminating the lease contract with CNL on August 26, 2002. However, there is no competent evidence to suggest that the property value was actually affected on that date. Appellant argues that the fact that it was no longer receiving income generated by the lease agreement is sufficient proof that the value of the property depreciated on August 26, 2002. As indicated in our discussion of appellant's second assignment of error, however, evidence of the leased fee and lost profits is not properly considered in the valuation of property in an appropriation case.
 {¶ 39} To the extent that appellant has failed to cite (and this court's review of the record has failed to disclose) any competent evidence in support of its proposed valuation date of August 26, 2002, its argument in favor of such is dismissed as meritless. Further, because we find that the trial court's determination of August 3, 2003 as the date of taking in this matter was supported by competent and credible evidence, appellant's third assignment of error is not well taken.
 {¶ 40} In its fourth assignment of error, appellant argues that the trial court erred in allowing ODOT's expert witness to read excerpts from a textbook.
 {¶ 41} The trial court allowed ODOT's valuation expert, Jeffery Upton, to read to the jury during direct examination excerpts from a treatise entitled "The Appraisal of Real Estate, 12th Edition." As Upton explained, the publication is recognized as authoritative by all appraisers who hold the Appraisal Institute's MAI designation. Upton read an excerpt explaining valuation of the fee simple interest in a leased property and highlighting the difference between the value of the lease and the value of the underlying real property. Upon objection by CNL as to the admissibility of the treatise, the trial court stated, "Overruled. It's a hearsay exception."
 {¶ 42} It is well established that "[i]n Ohio, textbooks and other learned treatises are considered hearsay, may not be used as substantive evidence, and are specifically limited to impeachment purposes only."Ramage v. Cent. Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, 110
(citations omitted); Evid.R. 706. Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C).
 {¶ 43} Because the excerpts from the treatise were introduced to prove the truth of the matter asserted therein and, further, were not used to impeach a witness, it is clear to this court that they were inadmissible hearsay. Although it was error for the trial court to admit the reading of those excerpts into the record, there is no evidence to suggest that such admission resulted in material prejudice to appellant. Accordingly, appellant's fourth assignment of error is found not well taken.
 {¶ 44} In its fifth assignment of error, appellant argues that the trial court erred in precluding CNL's Senior Vice President, Thomas Glenn Kindred, from testifying as to the value of the subject property.
 {¶ 45} Under Ohio law, a corporate officer may give lay opinion testimony as to the value of the corporation's property if the officer demonstrates specialized knowledge about the property similar to that of an individual owner. Tokles Son, Inc. v. Midwestern Indem. Co.
(1992), 65 Ohio St.3d 621, 627.
 {¶ 46} During voir dire, outside the presence of the jury, Kindred testified that before getting ready for the trial all he knew about the property was that it was the subject of an appropriation suit and that the tenant had terminated the lease. He further testified that his opinion of the property's value was based solely on what other people had told him. The trial court did not abuse its discretion in finding that such knowledge was not tantamount to that of an individual owner or in excluding Kindred's lay opinion testimony as to the value of the subject property. Appellant's fifth assignment of error is therefore found not well taken.
 {¶ 47} For the foregoing reasons, the judgment of the trial court is affirmed.
Pursuant to App.R. 24, court costs are assessed to appellant.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Parish, J., concur.